## ARTHUR HOWARD'S CASE.

Suffolk.    May 19, 1914. — June 17, 1914.

Present: RUGG, C. J., HAMMOND, BRALEY, SHELDON, & DE COURCY, JJ.

*Workmen's Compensation Act.    Tree Warden.*

Under St. 1911, c. 751, Part V, § 2, which provides that the word "employee" as used in the workmen's compensation act "shall include every person in the service of another under any contract of hire, express or implied, oral or written, except one whose employment is but casual, or is not in the usual course of the trade, business, profession or occupation of his employer," one who was employed as a tree trimmer by an electric lighting company, which employed men to trim trees to keep its wires clear, and was injured by falling from a tree into which he had been sent by the authorized order of a foreman of the company for the purpose of cutting off some dead branches, may be found by the Industrial Accident Board to have been an employee of the company at the time of his injury, although the foreman, whose order he was obeying, also was the tree warden of the town in which the accident occurred, no wires of the company ran through the branches of the tree, and the foreman had procured from the company authority to cut off the dead branches because he thought they were dangerous to the public.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board.

The case was heard by *Jenney,* J. The case had been presented to the Industrial Accident Board upon an agreed statement of facts substantially as follows:

The employee, Arthur Howard, was injured on August 1, 1912. He had been employed since July 22, 1912, by the Edison Electric Illuminating Company of Brockton, and his employment was as a tree trimmer for the company. The foreman of this work for the Edison Company was one Kennedy. On the morning of August 1, 1912, the trees on which trimming was to be done were wet because of a heavy rain the night before. On that morning, Howard got the team in which the tree trimmers went around to their work, and went to Kennedy's house and got Kennedy. While they were waiting to begin work another tree trimmer employed by the Edison Company, one Osborne, joined them. Rain then began again. When the rain had ceased, Kennedy, Howard and the other men drove off, following the lines of the Edison Company and inspecting the lines, and did no trimming. After going to the end of the line, they came back to the corner of School and Canton Streets in the town of Stoughton. Kennedy then said that there were some dead limbs upon a tree standing inside the sidewalk on the lawn of the Catholic Church. There were no wires of the Edison Company through the tree or on that side of the street. Kennedy told the men to climb the tree and lop off these dead limbs. One of the men took a ladder belonging to the Edison Company and placed it against the tree. Howard with two of the other men ascended the tree. While they were engaged in the work of lopping off the limbs, Howard slipped and fell from the tree and was injured. This injury totally incapacitated him for work.

The purpose of the Edison Company in employing men to trim trees was to keep its wires clear. The Edison Company had been in the habit of employing the tree warden of the town of Stoughton as the foreman over its gang of tree trimmers, because the company was not allowed to trim any shade trees in the town unless the tree warden was there to supervise such trimming. The company was obliged to do this trimming at least once a year to keep its wires clear.

The tree warden of the town of Stoughton is elected. Kennedy, mentioned above, had held the office for about twelve years. From two to five years he had been supervising the trimming work of the Edison Company. While supervising this work Kennedy was an employee of the company and acted as the fore-

man in charge of the company's men who were engaged in trimming trees. The Edison Company paid Kennedy $3 a day. The Edison Company did not employ Kennedy as tree warden, but they did employ him because he was tree warden. Kennedy did not hire or discharge the men who worked under him but supervised the work, saw that it was done properly and to his satisfaction, and the Edison Company looked to him to see that the men were kept working. Kennedy reported to one Mattau, the company's superintendent, any man who was not satisfactory.

Howard had worked for Kennedy off and on for three or four years in Kennedy's official capacity as tree warden. Kennedy introduced Howard to Mattau as a good man who had worked for him several years, off and on. On July 22, Mattau, acting on behalf of the company, engaged Howard to work for the Edison Company. At that time, Mattau told Howard to go with Kennedy and do what Kennedy told him to do.

Howard was hired by Mattau, acting for the Edison Company, could have been discharged by him, and received his pay from the company. Neither Kennedy nor Howard was paid or expected to be paid by the town of Stoughton for the work they were doing on the day of the accident.

Kennedy's duty, while engaged in the work of the Edison Company, was to trim trees through which their wires ran. Howard's duty, while engaged in the work of the Edison Company, was to obey Kennedy's orders.

While Kennedy was engaged in trimming the tree on the lawn of the church where Howard was injured, he was not doing it for the benefit of the Edison Company, but because he thought the dead limbs were dangerous. A day or two before the accident Kennedy had told Mattau, that there were one or two dead limbs on a tree near the church which he would like to have cut off when the men got around there. Mattau said, "Go ahead and do it." The tree referred to was the tree from which Howard fell, and the limbs were those which he was removing when he fell. Mattau testified that he gave this permission as superintendent with the backing of the company. Kennedy testified that when he ordered the men to go up the tree he gave the order as an employee of the Edison Company.

He further testified that he did not think he gave orders to Howard in particular as distinguished from the other men, to go up the tree, but that he did not remember. Howard testified that Kennedy gave the order to trim the tree to the whole gang of tree trimmers and that he believed that he had to obey Kennedy's orders or "get through." Howard further testified that Kennedy said to him, "You take one side of the tree, and I'll take the other."

Howard's average weekly wages were $12. The Industrial Accident Board found the foregoing facts. They further found that Howard received an injury arising out of and in the course of his employment on August 1, 1912; that at the time of the injury he was an employee of the Edison Electric Illuminating Company, insured by the Massachusetts Employees Insurance Association; and that he, therefore, was entitled to reasonable medical and surgical attendance from August 1, the date of the injury, up to and including August 14, and to compensation from August 15, 1912 to April 2, 1914, that is for eighty-five weeks, at the rate of $6 a week, being half his average weekly wages, amounting to $510, such compensation to be continued during his incapacity for work in accordance with the provisions of the act.

The judge made a decree affirming the decision of the Industrial Accident Board; and the insurer appealed.

The case was submitted on briefs.

*S. H. Pillsbury & H. C. Tuttle,* for the insurer.

*A. K. Reading, H. T. Patten & E. A. Marden,* for the employee.

HAMMOND, J. Upon this statement of agreed facts the Industrial Accident Board might have found that Howard, the employee, received his injury while engaged in trimming a tree; that in this trimming he was acting under the order of Kennedy; that Kennedy in giving the order was acting under the order of Mattau, the superintendent of the electric company, and that Mattau was acting as such superintendent in giving the order "with the backing of the company," or in other words that at the time Howard received his injury he was acting in obedience to the order of the electric company given to him through Mattau and Kennedy, its duly authorized officers or agents; that the town of Stoughton was in no way engaged in this work, that there was

no "lending" of Howard to the town by the company, and that Howard when hurt was doing work as an employee of the company and that he so supposed.

The insurer contends that, even if Howard was acting as an employee of the company, still the business of trimming this tree was casual and not in the usual line of his work. In support of this it is urged that he was employed as a tree trimmer of the company; that the purpose of the company in employing men to trim trees "was to keep its wires clear," and that the company had no interest in trimming trees except those through which its wires were run.

By St. 1911, c. 751, Part V, § 2, the statute under which the compensation is claimed, the word employee is defined to "include every person in the service of another under any contract of hire, express or implied, oral or written, except one whose employment is but casual, or is not in the usual course of the trade, business, profession or occupation of his employer." In the present case Howard was employed to trim trees and was to receive his orders from the company through Kennedy. It was no part of his business to inquire into the right of the company to trim any particular tree. He was to receive his orders from Kennedy and to obey them. At the time he was hurt he was doing what he had been hired to do. The work was not casual.

Nor was it outside the "usual course of the trade, business, profession or occupation" of the company. These words in the statute must be construed reasonably, and we are of opinion that they should be held inapplicable to a case like this, where the employee is engaged in the business for which he was hired and has no reason to think there is any change in the business, and where there is no change of employer.

*Decree affirmed.*