## WARDWELL D. COX'S CASE.

Suffolk. October 19, 1916. — November 28, 1916.

Present: RUGG, C. J., LORING, BRALEY, PIERCE, & CARROLL, JJ.

*Workmen's Compensation Act. Contract,* Construction.

If an employee of a corporation, who has been engaged as the manager of a shoe store and is to begin the full performance of his duties the next day, asks his predecessor to relieve him from the duty of making out his daily report that night, and then works overtime taking account of stock, and if while so working at about eight o'clock in the evening he is called to the telephone, it being his duty to answer telephone calls even outside the usual business hours, and is asked over the telephone by his daughter when he is coming home and while attempting to answer his daughter he falls downstairs and is injured, it can be found that the injury was one arising out of and in the course of his employment.

Where a corporation, engaged extensively in the manufacture of shoes and having a factory in a certain town and also maintaining from seventy-five to one hundred shoe stores in various towns and cities in the Commonwealth, becomes a subscriber under the workmen's compensation act and takes out a workmen's compensation policy of insurance which appears to apply only to injuries sustained at its factory in the town in question but wherein the insurer agrees " to pay the compensation . . . provided for by the workmen's compensation act . . . to any person . . . to whom such compensation . . . shall become due," the insurance covers an injury sustained by one of the corporation's employees arising out of and in the course of his employment as manager in one of the corporation's shoe stores, which is maintained by it in Boston, and such employee is entitled to compensation under the act.

APPEAL to the Superior Court under St. 1911, c. 751, Part III, § 11, as amended by St. 1912, c. 571, § 14, from a decision of the Industrial Accident Board.

In the Superior Court the case was heard by *Fox,* J. The evidence before the arbitration committee as reported by the Industrial Accident Board is described in the opinion. The board found upon this evidence that the employee received an injury in the course of and arising out of his employment and that this injury totally incapacitated him for work from September 17, 1915, to December 24, 1915. The board also affirmed a finding of the arbitration committee that the employee was insured under the act, ruling that when his employer, the Framingham Shoe Company, became a subscriber under the workmen's compensation act it became a subscriber for all its employees.

The judge made a decree affirming the decision of the Industrial Accident Board; and the insurer appealed.

The case was submitted on a brief by the insurer.

*E. C. Stone,* for the insurer.

RUGG, C. J. This is a proceeding under the workmen's compensation act. The first question is whether the finding of the arbitration committee, affirmed by the Industrial Accident Board, that Wardwell D. Cox received an injury in the course of and arising out of his employment, finds any support in the evidence. It cannot be set aside if there is any evidence upon which it can rest. *Pigeon's Case,* 216 Mass. 51.

The evidence was that Cox had been employed to work in a shoe store in Boston. He was notified to report for work on September 13, and the injury was received on September 17. His position at the moment of his injury, although not quite clear, was the equivalent in right of that of manager. He was to be manager of the store, but his predecessor was still in the store and was to conclude his service the next day. He was getting through when Cox came to work, but at Cox's request was relieving him of the duty of making out the daily report at the time of the injury. Cox was working overtime taking account of stock. He was injured by falling downstairs at eight o'clock in the evening while answering a telephone call from his daughter, who asked when he was coming home. The evidence would warrant the conclusion

that it was the duty of Cox to answer telephone calls even outside the usual business hours. If this was his duty, then the circumstance that the call happened to be one which interested him personally would not prevent his conduct in attending to the call from being service arising out of and in the course of his employment. There is nothing to indicate that the time spent at the telephone was longer than necessary to answer a call. The finding in this respect cannot be said to be without substantial foundation in the evidence.

The employer and subscriber was the Framingham Shoe Company, a manufacturer of shoes apparently upon a somewhat extensive scale, with a factory at Framingham. That corporation and its manager operate from seventy-five to one hundred shoe stores, all those in this Commonwealth being owned and operated by the corporation. It was insured in accordance with the workmen's compensation act by a policy which, under the heading "Classification Schedule of Business Operations," and subheading, "Location of each Building, Factory, Shop, Yard, or Place where the Trade, Business, Profession or Occupation will be conducted," contained these words: "Framingham, Mass." Under the further subheading, "Kind of Trade, Business, Profession or Occupation (Manual Classification)," were these words: "Boot & Shoe Mfrs. Military Goods Mfrs. (no metal Stamping). Drivers and Drivers' Helpers, Rates 30c and 80c respectively with 4% specific discount." The contract of insurance was "to pay the compensation and to furnish the medical and hospital services and medicines provided for by the Workmen's Compensation Act, viz: Part II of Chapter 751 of the Massachusetts Acts and Resolves of 1911, and amendments and additions thereto, to any person or persons to whom such compensation or services shall become due, and to indemnify the Insured under provisions of Section 22 of Part IV of said Act, for or on account of personal injuries, including death resulting at any time therefrom, received or suffered by any employee or employees of the Insured, or of a contractor or subcontractor as defined by Section 17 of Part III of said Act, within the Policy Term, subject, however, to the Agreements on the following pages and conditions herein stated." Among the "Agreements" was one giving the insurer ample power to examine the buildings and plants, to inspect the books of the insured for

information as to wages of its employees and to require written statements as to such wages.

The question is whether, under these circumstances, the business of conducting the retail shoe store in Boston is under the workmen's compensation act. We are of opinion that it is. The workmen's compensation act does not permit an employer to become a subscriber as to one part of its business and to remain a non-subscriber as to the rest of a business which is in substance and effect conducted as one business. It has been decided that insurance as to one class of employees of a farmer, engaged as drivers and helpers in the distribution and marketing of his produce, does not require insurance of farm laborers who are expressly exempted from the Act. *Keaney's Case*, 217 Mass. 5. We do not include within the scope of this decision transportation companies carrying on interstate commerce and in this regard wholly subject to the acts of Congress, *Corbett* v. *Boston & Maine Railroad*, 219 Mass. 351, *Northern Pacific Railway* v. *Washington*, 222 U. S. 370, but subject to State law as to intrastate business, nor those conducting two wholly different and distinct kinds of business quite disconnected with each other in place, nature and management. Such cases, if and when they arise, are to be considered on their own merits. We are dealing here with a case where one employer is conducting under a single general administration the business of "manufacturing, jobbing at the factory and selling at retail in the factory and in stores." The circumstance that at the retail stores are sold other shoes and rubbers beside those manufactured at the factory, does not render the retail stores a business separate from the general business which is carried on as a unit made up of numerous parts.

The general purpose of the act was to substitute its provision for the pre-existing rights and remedies under the law respecting injuries sustained by those engaged in industrial pursuits, with exceptions not here material. Although not compulsory in its application, inducements were held out to facilitate its voluntary acceptance both by employers and employees. It was an humanitarian measure enacted in response to a prevailing public sentiment that actions of tort at common law and under the employer's liability act did not give the measure of protection against injuries and relief for accidents which present economic

conditions demanded. Its general adoption throughout the Commonwealth was the legislative aim. *Young* v. *Duncan*, 218 Mass. 346, 349. This would be frustrated to a certain extent if employers might be insured under the act as to a part of their employees and remain outside the act as to others.

A critical examination of the statute discloses no purpose to permit partial insurance by employers. On the contrary, its framework and its details manifest a design to treat the employer wholly within or wholly without the act. "Subscriber" means "an employer who has become a member of the association" or insured under the act, while "employee" includes "every person in the service of another under any contract of hire, express or implied, oral or written." Part V, § 2. It is provided by Part IV, § 20, that "Every subscriber shall, as soon as he secures a policy, give notice, . . . to all persons under contract of hire with him that he has provided for payment to injured employees;" by § 21, as amended by St. 1912, c. 571, § 16, that "Every subscriber shall give notice . . . to every person with whom he is about to enter into a contract of hire that he has provided for payment to injured employees. . . . If an employer ceases to be a subscriber he shall . . . give notice thereof . . . to all persons under contract with him . . . ;" and by § 22, that "If a subscriber . . . is required by any judgment of a court . . . to pay to an employee any damages on account of personal injury . . . , the association shall pay to the subscriber the full amount of such judgment." By Part III, § 17, if a subscriber enters into a contract for the doing of its work the employees of such contractor or his subcontractor are protected by the act and entitled to its benefits. By Part II, § 1, every employee who has not given notice of his intention to retain his common law rights, who receives an injury arising out of and in the course of his employment, shall be paid compensation "if his employer is a subscriber." By Part I, § 3, it is provided that the limitation of certain defences in actions by employees for personal injuries shall not apply to actions "for personal injuries sustained by employees of a subscriber;" and by § 4, that the employers' liability act "shall not apply to employees of a subscriber;" while by § 5, "an employee of a subscriber shall be held to have waived his" common law rights unless he gives certain notices.

It is clear from those provisions that the act is not designed to be accepted in part and rejected in part. If an employer becomes a subscriber he becomes a subscriber for all purposes as to all branches of one business with respect to all those in his service under any contract of hire. All the terms of the act are framed upon the basis that the employer is either wholly within or altogether outside its operation. There is no suggestion or any phrase warranting the inference that there can be a divided or partial insurance.

The practical administration of the act renders it highly desirable that a single rule of liability should apply throughout any single business. Otherwise difficult and troublesome questions often might arise as to liability or non-liability dependent upon classifications of employees and scope of their duties. Litigation as to the line of demarcation between those protected by the act and those not entitled to its benefits would be almost inevitable. Instead of being simple, plain and prompt in its operation, such division of insurance would promote complications, doubts and delays.

The terms of the policy apparently applying only to the factory at Framingham are not of much significance so far as the employee is concerned. The workmen's compensation act fixes the scope of the insurance so far as the rights of the employee are affected. If the employer becomes a subscriber, then the rights of the employee cannot be narrowed by contract between the employer and the insurer. *Gould's Case*, 215 Mass. 480, 483. It may be that the terms of the contract of insurance might be so narrow as not to bring the employer within the act. But the present is not such a case. The obligation of the policy is " to pay the compensation . . . provided for by the workmen's compensation act . . . to any person . . . to whom such compensation . . . shall become due." The insurer, therefore, has assumed an obligation as broad as the act, and the employer was a subscriber. This proceeding does not relate to the rights and duties between the insurer and the employer.

*Decree affirmed.*