### MANUEL SOARES'S (dependent's) CASE.

Suffolk.  November 15, 26, 1929. — January 6, 1930.

Present: RUGG, C.J., CROSBY, PIERCE, CARROLL, & WAIT, JJ.

*Workmen's Compensation Act,* Injuries to which act applies, To whom act applies.

At the hearing by the Industrial Accident Board of a claim by a widow under the workmen's compensation act, there was evidence that the claimant's husband had been employed to do what repairing was necessary, "carpentry, plumbing, and general work," around apartment houses owned by the subscriber and rented by him to tenants; that the subscriber was engaged in the real estate business and in the business of building houses; that the employee also worked for the subscriber on houses in process of construction and worked in a mill; that the subscriber had given him a gasoline torch for the purpose of thawing out frozen pipes in his houses; and that, while the employee was repairing the torch on a cold evening in anticipation of having to

use it the next day, it burst into flames and the employee sustained burns causing his death. The board found that the repairing of the torch was incidental to the employment of the deceased and that the employee had received an injury arising out of and in the course of his employment. *Held*, that

(1) The finding, that the repairing of the torch was incidental to the employment of the deceased, was warranted;

(2) A finding, that the caring for the apartment houses was a part of the usual business of the subscriber, was warranted;

(3) The finding, that the injury arose out of and in the course of the deceased's employment by the subscriber, was warranted.

The insurance policy issued to the subscriber under the workmen's compensation act in the circumstances above described covered "all carpentry" work, all "masonry," "Excavation — for cellars," "Plumbing," "Plastering," "Grading." The Industrial Accident Board found that the policy covered the employee while repairing the torch. *Held*, that

(1) The employee properly could be found to have been engaged in plumbing work within the meaning of the policy while repairing the torch;

(2) The finding by the board was warranted.

CERTIFICATION to the Superior Court in proceedings under the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation to the widow of Manuel Soares.

Material evidence at the hearing of the case by a single member of the board and findings by him are stated in the opinion. The board in review affirmed and adopted the findings and decision of the single member. In the Superior Court, a final decree was entered by order of *Bishop*, J., awarding compensation. The insurer appealed.

*H. B. White*, for the insurer.

*C. W. Donovan*, for the claimant, submitted a brief.

CARROLL, J. In this proceeding under the workmen's compensation act, the dependent widow of Manuel Soares, the deceased employee, was awarded compensation. The record states that the insurer objected to the payment of compensation because the accident, which caused burns to the employee resulting in his death, did not arise out of and in the course of his employment. Also, the insurer objected because the employee was not employed by the subscriber, nor covered by the policy issued to the employer.

It was found that the employee was injured while cleaning a torch which had been given him by the subscriber to be used in thawing frozen pipes on the subscriber's properties; that such work was incidental to the employment, and when injured the deceased was engaged in such work. It was further found that the policy in question was sufficient to cover the employee.

It appeared that the deceased worked in a mill as a doffer; that in addition to this he worked for Israel Pokross, the employer, in caring for and repairing his tenements. Mrs. Soares testified that Pokross gave the torch to her husband; that when the pipes were frozen her husband used the blow-torch on them; that he used it before the day of the accident. Pokross testified he gave the gasoline torch to the deceased "so that he would have everything necessary to take care of things that happened in the winter time on the buildings, such as bursting pipes." There was evidence that when the accident happened the deceased was fixing the torch in the kitchen of his home; that it was a cold night and he said: "I will have to fix the pipes tomorrow morning, so I will have to stay home and fix the torch"; that he told his wife, referring to the torch, "he did not like the way it worked." Mrs. Soares testified she was with her husband in the kitchen when he was working on the torch; that "I heard that puff and I heard him say 'My God' and when I turned around it was all flames."

Assuming that the deceased was covered by the policy, and that his employment as a helper or repair man about the real estate of Pokross was in the usual trade, business or occupation of Pokross, the repairing of the torch was incidental to the deceased's employment. If thawing out the pipes was an employment within the meaning of the statute, the necessary preparation was a part of it, and it could have been found to be covered by the statute.

It seems that Pokross was in the real estate business. He built houses, and owned several apartment houses which were rented to tenants. There was evidence that Soares was employed by Pokross to do what was necessary around

the property, "carpentry, plumbing, and general work"; he had repaired cellar windows, fixed the cellar door and thawed out pipes. He did this kind of work on several houses belonging to Pokross. The employer testified that Soares did work on the new constructions; he was also employed in looking after the tenements, "anything . . . to be done in carpentry work he would fix it up for me." Pokross was asked if the employee "did anything in connection with buildings not occupied"; he answered, "Yes, he helped to fix up a fence in one place. I have twenty-two buildings on the same street where he lived." It appeared that the employee repaired windows and put in the frames in unfinished buildings. He "did lots of work for . . . [Pokross] with sewers"; he cemented the pipes; he "fixed up a step with cement."

The policy covered "all carpentry" work, all "masonry," "Excavation — for cellars," "Plumbing," "Plastering," "Grading." It could have been found that the employee was engaged in the usual course of trade, business or occupation of Pokross. A part of his business was the renting of tenements and the care of them. In *Olsen's Case*, 252 Mass. 108, and *Van Deusen's Case*, 253 Mass. 420, relied on by the insurer, the employee was outside of the employer's regular business when injured. Here the employee was engaged in what was or could be found to be a regular part of his business; he worked on the houses in process of construction as well as repaired the ones which were ready for occupation. Pokross testified that he did not consider the rentals of his houses a part of his business, that he was in the real estate and building business, but he also testified that the collections were taken care of by his children; "It is my business." He was then asked: "In which branch of your business does that fall in," and he replied, "Probably real estate." The caring for the tenements was not an occasional or incidental part of the business or the trade of Pokross; it was his ordinary business and a part of his usual occupation. See *Howard's Case*, 218 Mass. 404. In this branch of the case there was evidence to support the findings of the board. Under the classifications of the policy, plumbing, as well as

carpentry and mason work, was covered. Soares had been employed at this kind of work, and it could be found that in thawing the pipes or preparing for this work, he was engaged in the employment of plumbing and that his injury arose out of it. See *Cox's Case*, 225 Mass. 220, 224, 225.

Cases where an employee is injured when outside the scope of his employment, or engaged in some business of his own, have no application.

*Decree affirmed.*