VICTOR K. ANDERSON'S CASE.

Suffolk.    April 10, 1931. — June 6, 1931.

Present: RUGG, C.J., CARROLL, WAIT, SANDERSON, & FIELD, JJ.

*Workmen's Compensation Act*, To whom act applies, Findings by Industrial Accident Board.

Where, at the hearing of a claim for compensation under the workmen's compensation act by an employee who was injured while at work for the subscriber in wrecking a building, the evidence warranted findings by the Industrial Accident Board that, although the policy of insurance issued by the insurer to the subscriber stipulated that the business of the subscriber was "hay, grain and feed" dealer without mention of his being a dealer in junk, he carried on the hay, grain and feed business and the junk business as one enterprise, and that the insurer knew that he was engaged in an enterprise which included dealing in junk and received an additional premium based in part upon a payroll including wages paid to junk men; and the findings justified an inference that the board also found that the wrecking of the building was so connected with dealing in junk as to form a part of the subscriber's junk business, compensation properly was awarded even though the issue of fact was close and there was evidence which would have supported contrary findings barring the employee from receiving compensation under said policy.

CERTIFICATION to the Superior Court under the provisions of the workmen's compensation act of a decision by the Industrial Accident Board awarding compensation.

The board found that "the insurer had knowledge . . . of the fact that the subscriber was engaged in an enterprise which included dealing in junk and received an additional premium based at least in part upon a payroll which included wages paid to junk men." Other material findings and evidence are stated in the opinion. By order of *Whiting*, J., in the Superior Court, a decree was entered in accordance with the board's decision. The insurer appealed.

*J. F. Casey*, for the insurer.

*S. B. Horovitz & G. Gruzen*, for the claimant.

CARROLL, J.   The employee, an iron worker, was severely injured while at work for the employer in wrecking a power

plant of the Boston Elevated Railway Company, in Cambridge, on April 2, 1930. He was awarded compensation under the workmen's compensation statute. From the decree of the Superior Court the insurer appealed.

The Industrial Accident Board found that Julius Zimble, the employer, carried on the hay, grain and junk business as one enterprise. A policy of insurance dated August 1, 1929, insured Zimble until August 1, 1930. It was stipulated in the declarations, which formed a part of the policy, that the business of Zimble was "hay, grain and feed dealers" in Chelsea. No mention was made of junk and there is nothing in the policy to indicate that dealing in junk was any part of the insured's business. From the conclusion reached by the board we infer that it found the work of tearing down the power plant was so connected with dealing in junk as to form a part of the employer's junk business.

It was decided in *Cox's Case*, 225 Mass. 220, that the workmen's compensation act does not permit an employer to insure his employees in one part of his business and remain a nonsubscriber as to the rest of the business which, in substance and effect, is conducted as one business. It was expressly stated in that case that two wholly different and distinct kinds of business disconnected from each other in place, nature and management were not included within the scope of the decision. *Cox's Case* was followed in *Shannon's Case*, 274 Mass. 92. *Phalen's Case*, 271 Mass. 371. See *Howard's Case*, 218 Mass. 404; *Soares's Case*, 270 Mass. 3. In *Pallotta's Case*, 251 Mass. 153, it was decided that an employer who conducted two separate and distinct kinds of business could become a subscriber as to one part of the business without insuring his employees in the different and distinct business. In the case at bar, on the face of the policy it would seem that only the employees of the hay, grain and feed business were insured; and it could have been found that Zimble was not in the junk business when the policy was issued, that the insurer had no knowledge that the insured was in the junk business, that the wrecking of a power building was not part

of the junk business; and further, on the testimony of Zimble's son, who was manager of the business, that the subscriber knew the policy did not cover the crew of iron workers; that the injured employee was one of the crew of those iron workers who were hired "a couple of weeks before this accident."

On the evidence presented it might well have been found that, if Zimble did in fact carry on the junk business, it was a separate and distinct business from that of hay, grain and feed. It could have been found that the wrecking of the buildings was no part of the junk business, was not connected with it, was a distinct and separate business and was never undertaken by Zimble previous to the taking down of the power house in question. It could, however, have been found on the evidence of the subscriber's manager, if believed, that the original business "was a junk business," that hay and grain were added, that the hay, grain, feed and junk transactions were conducted as one entire and connected business. Further, it could have been found that the demolishing of the structure in Cambridge was preliminary to breaking up the iron and disposing of it as junk. There was evidence to support this conclusion. It appeared that the subscriber as "a part of his junking business" had "his men go to where buildings are being torn down and take out the iron and metals"; that "When he had heavy iron" work he "usually had an iron rigger and on this building there were some particularly heavy pieces . . . that work he sublet to riggers . . . the light jobs" his "own men did"; that he "had bought junk from buildings like this for the past fifteen years. If he didn't have enough hay, grain and junk men in the business he would get outside men to help on these jobs. The getting of junk from buildings being torn down was part of his regular business with hay, grain and junk."

The case presented an issue of fact. While we consider it a close question whether there was any evidence to support the finding that the hay, grain, feed and junk business was conducted as one enterprise, or any evidence to sustain the finding that the wrecking of the power house was

so connected with the junk business as to constitute a part of it, so that the injured employee was covered by the policy, we cannot say as matter of law that there was no evidence in support of these findings. It follows that the decree is to be affirmed.

*So ordered.*