MICHAEL ROMANO, PETITIONER, v. RALPH, THOMAS AND
LOUIS DiDONATO, RESPONDENTS-PROSECUTORS, AND
UNITED STATES CASUALTY COMPANY, A CORPORA-
TION, RESPONDENT-DEFENDANT.

Submitted October 7, 1941—Decided December 22, 1941.

Before Justices BODINE, PERSKIE and PORTER.

For the respondents-prosecutors, *David Roskein* and *John
A. Laird.*

For the respondent-defendant, *Cox & Walburg* (*Harry E. Walburg*).

BODINE, J. The appeal seeks to review a judgment in the Essex County Court of Common Pleas in favor of the United States Casualty Company. The case was tried on an agreed state of facts before the court without a jury.

Ralph, Thomas and Louis DiDonato, brothers, individually and trading as DiDonato Brothers, operated a wholesale fruit and produce business at No. 66 Cornelia Street, Newark. In July, 1939, the partnership purchased three parcels of land in Bloomfield. One tract was deeded to each of the three partners. In July of 1939, the defendants, as co-partners, began the construction of three separate houses upon the land to which each individually had title. Each was to own and control the house to be erected on his land. Payments to materialmen and laborers were made from the partnership account. In the course of the building operation, one Michael Romano was injured by an accident arising out of and in the course of his employment.

The construction of the houses was a business carried on by the partners even though no profit resulted to the partnership. The result of the operation was that each partner had a house built with partnership money and by labor employed by the partnership. The building operation was not undertaken by the partners as individuals. *Serafino* v. *U. S. Fidelity and Guaranty Co.*, 122 *N. J. L.* 294. They had not drawn a share of profits and spent it for a house to live in; they had built the houses as a joint operation. No doubt the reason was that it was more profitable to build the houses jointly than separately. If the insurance carrier had inspected the payroll it would have discovered the fact. The construction of the houses would not ordinarily be a part of the fruit and produce business, but it certainly was a separate business carried on by the partners in connection with the business admittedly covered.

At the time of the accident, the DiDonato Brothers held a standard form of workmen's compensation insurance policy issued by the United States Casualty Company. The com-

pany disclaimed liability. There was an award in the bureau and the employee brought this suit to enforce his judgment against the insurance company.

The question for determination in this case is the meaning of *N. J. S. A.* 34:15-87. That statute, so far as pertinent, provides as follows: "no provision of such policy shall be construed to restrict the liability of the insurer to any stated business, plant, location, or employment carried on by an assured unless the business, plant, location, or employment excluded by such restriction shall be concurrently separately insured or exempted as provided for in this article." Such was not the case. The statute further provides: "Any policy issued contrary to the provisions of this section shall be construed as incorporating the provisions herein contained. No insurer shall, in action brought upon such policy, plead in defense of such action any provision of such policy which violates any provision of this section."

In the case of *Rosenbloom* v. *Great American Indemnity Co.*, 122 *N. J. L.* 337, the plaintiff sought to recover against his insurance carrier the compensation which he had been obliged to pay to a household servant. The policy was issued to him as doing business as the Service Print Shop and purported to cover the risk with respect to employees in that business. The household servant's name appeared upon the business payroll. Mr. Justice Perskie, in writing the opinion of this court, said: "While the legislature has thus unquestionably curtailed the field of non-liability in workmen's compensation insurance policies, it has not made such policies so all inclusive as to cover every type of employer. On the contrary, it has specifically excepted those employers who at the time of the passage of the act were exempt, such as employers of farm laborers and domestic servants. *R. S.* 34:15-92. The case at bar is controlled by the adjudications prior to the enactment of *R. S.* 34:15-87."

In *American Mutual Liability Insurance Co.* v. *Chodosh*, 123 *N. J. L.* 81; *affirmed,* 124 *Id.* 561, it appears that Chodosh Brothers and Wexler Coal & Ice Co., Inc., controlled by the three Chodosh brothers and Wexler, a brother-in-law, were engaged in the coal, ice and fuel oil business. The

company owned two plants and some residential property near one where the decedent, one of his brothers, and Wexler, lived with their respective families. In back of the residential properties was a screened summer house which was sometimes used for meetings. The decedent, while painting the roof, met with an accident. Held, in the bureau to have arisen out of and in the course of his employment. The insurance carrier refused to defend, as in the instant case, on the ground that the accident was not within the terms of the policy. Hence, an action was brought to compel payment of the award under the terms of the policy. The widow had judgment in the Pleas and in the Supreme Court, on *certiorari,* the judgment was reversed and the Court of Errors and Appeals affirmed that judgment on the opinion below by a 6 to 5 vote. The decision, in that case, rests upon the theory that the painting of the roof of the summer house was not a separate business and was not within the confines of the insured's business. Chodosh, in painting the roof of his summer house, was not carrying on the business of the firm or the corporation, but he was working on the house where he lived. He might have been picking flowers or watering the lawn when he suffered the sunstroke. It could not then be said that he was acting within his employment. Hence, the insurance carrier was not liable. That that is so appears from the opinion. Chief Justice Brogan said: "The pertinent part of this enactment is that 'no provision of such policy shall be construed to restrict the liability of the insurer to any stated business, * * * carried on by an assured unless the business * * * excluded by such restriction shall be concurrently separately insured or exempted as provided for in this article.' But here there was no such separate business, as the term is ordinarily understood, carried on by the employer."

The first case cited in support of the reasoning in that case is *Stefanik* v. *Ocean Accident and Guaranty Corp.,* 14 *N. J. Mis. R.* 708. There the prosecutor of the writ was an employee of the Mira Theatre Corporation, which controlled two moving picture houses, one the Essex Theatre at 100 Springfield Avenue, Newark, and the other the Congress

Theatre on South Orange Avenue, that city. The Mira Corporation carried compensation insurance with the Ocean Accident and Guarantee Corporation covering accidents at the Essex Theatre. The petitioner was injured while working not at the Essex Theatre but at the Congress. Held, not covered. The question presented in this case seems not to have been considered, if raised.

The other case is *Central Surety and Insurance Corp.* v. *Geirsky,* 11 *N. J. Mis. R.* 716. In that case, the claimant was a farm hand. The insured was engaged in a mechanical business. That decision can well stand with the reasoning advanced in this court in *Rosenbloom* v. *Great American Indemnity Co., supra.*

In the instant case, the DiDonato brothers were engaged in two operations; one the produce business, the other the building business. The defendant's policy, the legislature has said, cannot restrict the liability of the insurer to any stated business, any stated plant, any stated location, or any stated employment carried on by the DiDonato brothers, unless the business excluded was separately insured, or as in the Rosenbloom case, exempted under the statute. The building business was not exempted under the statute nor was it separately insured.

In the case of *Fidelity and Casualty Co.* v. *Hill Construction Co.,* 11 *N. J. Mis. R.* 58, First Judicial District Court of Burlington County, an action was brought for premiums alleged due on two policies of workmen's compensation insurance taken out by the defendant. The policies were standard form. The classification of operations expressly excluded employees engaged in "excavation, pile driving or all work in tunnels, subways or caissons—including employees engaged in making, setting up, or taking down forms, scaffolds, false work or concrete distributing apparatus." The premiums sued for covered the payroll of employees so engaged. The District Court opinion found that the contracts in suit were made pursuant to the Compulsory Insurance Act, and having examined the 1917 act, the predecessor of the present statute, the court concluded that the defendant was liable for the premiums based upon the entire payrolls during the period

of coverage, because the insurance carrier, he felt, would be liable to the employee suffering from accidental injury arising out of and in the course of the employment. Such was the view of the insurance carrier, otherwise the action would not have been brought.

Under the Employer's Liability Insurance Law (*N. J. S. A.* 34:15-71) every employer, except public bodies, must make provision for injured employees and their dependents as provided for in 34:15-77 and 78. (1) The employer may carry his own insurance as provided by law. If he does not, he must (2) carry insurance as directed. Such insurance is for the benefit of the employee and he may sue the carrier directly and the bankruptcy of his employer deprives him of no right. The classification of risk and the rates for the insurance are subject to approval by the Commissioner of Banking and Insurance. *R. S.* 34:15-88. The rates are fixed by the amount of the payroll.

In the instant case, if the number of employees was increased, or the risk increased, the premiums for the insurance would be increased. The carrier could recover, therefore, if the same were not paid.

It seems that the legislature intended that the employee in the course of his employment should have the benefit of insurance. He was given, under the statute, a right against his employer or his employer's insurance carrier. The insurance was not restricted to any plant, or location, and unless an excluded business was separately insured or exempted under the terms of the act, the carrier would be liable for the work done in such business. The legislature intended that the employee was to be protected at all times by reason of the compulsory insurance law. The employee's right arises under the statute and not under the policy which must be given the declared statutory meaning.

Constant reference is made by the courts to the remedial nature of the act and the liberality of construction necessary to secure to those injured in industry compensation for their loss. The carrier knows its insured; it has access to his books. It can find out precisely what he is doing. The employees have no access to the policy. It is very doubtful

if they could understand it if they studied it for years. They can, however, rely upon the insurance law passed for their benefit. Workmen's compensation would be of no use if the workman could secure nothing if the employer became bankrupt at a time when he could no longer work. Hence, the wisdom of the legislature is apparent in securing compulsory insurance of a form sufficient to cover the employment of the workman wherever engaged in work.

Statutes of other states are never too helpful in construing our statutes, unless they have been precisely modeled.

The following Wisconsin cases seem to support the view taken.

In *Heal et al.* v. *Adams et al.*, 221 *N. W. Rep.* 389, Adams was employed by Heal to drive a tractor. He was engaged in road construction and logging. On the day of the accident, Adams was directed by his employer to drive a tractor to plow a lot of less than a half acre for one Long. Long was going to plant the lot in tobacco. Heal had a compensation insurance policy with defendant company. Under subdivision (1), section 102.31, *Stats.* 1925, it is provided: "Every contract for the insurance of the compensation herein provided for, or against liability therefor, shall be deemed to be made subject to the provisions of section 102.03 to 102.34, inclusive, and provisions thereof inconsistent with sections 102.03 to 102.34, inclusive, shall be void. Such contract shall be construed to grant full coverage of all liability of the assured under and according to the provisions of section 102.03 to 102.34, inclusive, notwithstanding any agreement of the parties to the contrary unless the Industrial Commission has theretofore by written order specifically consented to the issuance of a contract of insurance on a part of such liability. \* \* \*"" Under this section the insurance policy covered the employment of Adams, although at the time of his injury he was engaged in a task other than building roads and logging. See, also, *Wallrabenstein et al.* v. *Industrial Commission of Wisconsin et* 21, 216 *N. W. Rep.* 495, where there was a similar finding. See, also, *In re Cox,* 225 *Mass.* 220; 114 *N. E. Rep.* 281.

The judgment under review will be reversed, with costs.