George F. WHITE, Jr., Plaintiff,

v.

COLLINS ELECTRIC COMPANY, Inc., Defendant.

Civ. A. No. 60-514-J.

United States District Court
D. Massachusetts.

Jan. 7, 1964.

**240**

See publication Words and Phrases for other judicial constructions and definitions.

---

Abner R. Sisson, Boston, Mass., for plaintiff.

Walter F. Henneberry, Boston, Mass., for defendant.

1. G.L., c. 152, § 15: "Where the injury for which compensation is payable was caused under circumstances creating a legal liability in some person other than the insured to pay damages in respect thereof, the employee may at his option proceed either at law against that person to recover damages or against the insurer for compensation under this chapter, but, except as hereinafter provided, not against both. * * *"

2. G.L., c. 152, § 18: "If an insured person enters into a contract, written or oral, with an independent contractor to do such person's work, or if such a contractor enters into a contract with a sub-contractor to do all or any part of the work comprised in such contract with the insured, and the insurer would, if such

JULIAN, District Judge.

The plaintiff brought this suit to recover damages for personal injuries allegedly caused by the negligence of employees of the defendant, Collins Electric Company, Inc. (Collins), on November 18, 1959, in Holyoke, Massachusetts, while he was working as an employee of Hartwell Company, Inc. (Hartwell), in the construction of a power plant of the Holyoke Water Power Company (Holyoke).

The defendant Collins claims that the plaintiff is precluded from bringing this action by the provisions of the Massachusetts workmen's compensation act, General Laws, chapter 152, sections 15 [1] and 18.[2]

The plaintiff contends that this case falls within the exception stated in section 18.[2]

By agreement of the parties this issue was severed from the remainder of the case and tried to the Court without a jury. The issue of the defendant's negligence was left undecided.

### FINDINGS OF FACT

1. The requisite facts for federal jurisdiction were admitted to exist.

2. The parties stipulated to the following facts:

(a) At the time the plaintiff was injured he was an employee of

work were executed by employees immediately employed by the insured, be liable to pay compensation under this chapter to those employees, the insurer shall pay to such employees any compensation which would be payable to them under this chapter if the independent or subcontractors were insured persons. * * * This section shall not apply to any contract of an independent or sub-contractor which is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured, nor to any case where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work for the insured or which are under the control or management of the insured. * * *"

Hartwell and his injuries arose out of and in the course of his employment.

(b) At the time of the injuries, employees of the defendant Collins were in control of and working with the cable that came in contact with the plaintiff.

(c) Said employees of Collins were working within the scope of their employment.

(d) The plaintiff did not give his employer written notice that he claimed his right of action at common law.[3]

3. In December, 1956, Holyoke, by written contract (Exh. M) retained the services of Jackson & Moreland, Inc., a firm of engineers, to render engineering services to the extent therein specified for the planning and construction of Holyoke's Mt. Tom Power Plant in Holyoke, Massachusetts.

4. In August, 1957, Holyoke entered into a single written contract (Exh. A) with two entities, Daniel O'Connell's Sons, Inc. (O'Connell's) and Thomas O'Connor & Company, Inc. (O'Connor), both Massachusetts corporations, covering the general structural work and installation of certain power equipment for the power plant. The general structural work was to be done by O'Connell's and the installation of power equipment by O'Connor. The work was to be prosecuted in accordance with specifications, drawings, and purchase orders issued from time to time by Holyoke. The contract called for the payment by Holyoke of the cost of the work plus a fixed fee.

5. In July, 1958, Holyoke issued a purchase order (Exh. F) to Grinnell Company (Grinnell), a corporation, to furnish, fabricate and erect high- and low-pressure piping for the plant. The purchase order was accepted by Grinnell, which in turn delegated the performance of the work to Hartwell, its wholly owned subsidiary and the plaintiff's employer.

6. In October, 1958, O'Connor subcontracted (Exh. H) certain electrical work at the power plant to the defendant Collins.

7. Holyoke contracted directly with other persons for the supply and installation of other major items required for the construction of the power plant.

There was no general contractor. Holyoke, the owner, exercised all the functions ordinarily exercised by a general contractor.

Holyoke was the "common employer" in the construction of the power plant.

8. At the time the plaintiff was injured, employees of Hartwell, including the plaintiff, and employees of Collins were engaged, respectively, in the performance of their employers' contracts on the job site.

9. Holyoke retained the right to control, manage, coordinate, and supervise the construction of the plant. It exercised this right continuously at the site of the construction through its own employees. The contractors and subcontractors received and followed instructions given them by Holyoke's chief engineer, who was the project engineer having full responsibility for the construction of the plant.

Besides its chief engineer, Holyoke had the following employees actively engaged on the job:

(a) An assistant to the project engineer.

(b) A supervisor of the electrical work.

(c) A steam engineer (the new plant was to be powered by steam).

(d) An employee who handled all accounting work at the construction site. All bills were

---

3. G.L. c. 152, § 24: "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury therein occurring, to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right * * *."

submitted to him for approval. He was assisted in this work by another Holyoke employee.

(e) A line crew of about six employees who from time to time installed temporary power facilities.

(f) Engineers who inspected construction. These were in addition to inspection personnel supplied by Jackson & Moreland, Inc.

(g) About 45 painters.

The survey for the layout of the plant was done by Holyoke surveyors. Most of the blueprints were made at Holyoke's main office; and to a minor extent part of the drafting of the plans was done by Holyoke employees.

10. At all times material to this case Holyoke, O'Connell's, O'Connor, Grinnell, Hartwell, and Collins were insured persons within the meaning of the Massachusetts workmen's compensation act. Each had obtained insurance for the payment to its employees working on the construction of the power plant of the compensation provided by the Massachusetts workmen's compensation act.

11. Holyoke Water Power Company was made a corporation in 1859 by a special legislative act for the purpose, among others, of creating and maintaining water power to be used by itself and to be sold to other persons for manufacturing purposes (Chapter 6 of the Acts of 1859). Subsequent legislative acts enlarged its powers. Chapter 350 of the Acts of 1903 authorized the corporation "to manufacture electricity for power purposes, within the city of Holyoke and the town of South Hadley, and to sell and distribute the same * * *." Chapter 152 of the Acts of 1909 authorized Holyoke to sell electricity to any tenant occupying any mill or factory building which it had constructed since January 1, 1909, "or may hereafter construct."

12. Prior to undertaking the construction of the Mt. Tom Power Plant,

Holyoke had built for its own use the following structures, among others:

(a) In the early 1920's, a hydroelectric plant to generate electricity.

(b) At about the same time, a hydroelectric unit.

(c) In the 1920's also, a steam turbine power plant.

(d) About 1931, a hydroelectric unit of substantial size.

(e) About 1949–51, a large hydroelectric plant at Hadley Falls.

(f) About 1943, a boiler, and the building housing it, of substantial dimensions.

Plants (a), (b), and (d) were built directly by Holyoke with its own employees. The other plants were built by contractors, but some employees of Holyoke participated in their construction. The electrical work at plant (e) was performed by Holyoke employees.

In addition, Holyoke had also developed an industrial park which included seven plants, the largest of which was designed by Holyoke employees. The construction of six of them was supervised by Holyoke's chief engineer.

13. Holyoke sells water power, process water, and steam to industrial users. It sells electric power to industrial and commercial users. It supplies electricity for re-sale to its wholly owned subsidiary, Holyoke Power and Electricity Company. It has engaged in these business activities before and since the plaintiff received his injuries.

Holyoke's principal source of income is the manufacture and sale of electricity. Thus, in 1959, out of a total income of about $3,000,000, the sale of electricity accounted for about $2,500,000.

14. The construction of power plants for the manufacture and distribution of electricity was part of and process in the trade and business carried on by Holyoke, and was not merely ancillary and incidental thereto.

## CONCLUSIONS OF LAW

■ 1. The law of Massachusetts is the law to be applied to the decision of this case.

2. G.L. c. 152, § 18 provides for compensation under the act for injured employees of independent contractors or subcontractors who have contracted to do all or part of the work comprised in the job which a general contractor or common employer insured under the workmen's compensation act, is carrying on, if the insurer would be liable had they been employees of the general contractor or common employer; but makes an exception if the contract of the independent contractor or subcontractor is merely ancillary and incidental to, and is no part of or process in, the trade or business carried on by the insured or where the injury occurred elsewhere than on, in or about the premises on which the contractor has undertaken to execute the work for the insured or which are under the control or management of the insured. Willard v. Bancroft Realty Co., 1928, 262 Mass. 133, 159 N.E. 511; Bresnahan v. Barre, 1934, 286 Mass. 593, 190 N.E. 815.

■ 3. Holyoke was an insured person under the workmen's compensation act with respect to the construction of the power plant. The insurance policy (Exh. E) provided Holyoke with workmen's compensation insurance broad enough to be coextensive with the provisions of the workmen's compensation act. Cox's Case, 1916, 225 Mass. 220, 114 N.E. 281; Employers Mutual Liability Ins. Co. of Wisconsin v. Merrimac Mills Co., 1950, 325 Mass. 676, 92 N.E. 2d 256.

4. While it is true that in the case at bar there was no general contractor, it is also true that the functions of a general contractor were in fact performed by Holyoke itself, who was the owner and an insured person. Cozzo v. Atlantic Refining Co., 1938, 299 Mass. 260, 12 N.E.2d 744.

■ 5. "One purpose of the Workmen's Compensation Act was to sweep within its provisions all claims for compensation flowing from personal injuries arising out of and in the course of employment by a common employer insured under the act, and not to preserve for the benefit of the insurer or of the insurer and those injured liabilities between those engaged in the common employment which but for the act would exist at common law." Bresnahan v. Barre, 1934, 286 Mass. 593, 190 N.E. 815; McPadden v. W. J. Halloran Co., 1958, 338 Mass. 189, 154 N.E.2d 582.

■ Holyoke was the common employer within the meaning of the act. At the time the plaintiff was injured, Hartwell's employees, including the plaintiff, and the defendant Collins' employees were engaged in the common employment of constructing Holyoke's power plant. Since he had not given notice of retention of common law rights under section 24[4] of the act, the plaintiff is held by the provisions of that same section to have waived his right of action at common law against Collins, as well as against Hartwell and Holyoke. Dresser v. New Hampshire Structural Steel Co., 1936, 296 Mass. 97, 4 N.E.2d 1012. What the Court said in Dresser is pertinent here,

> "In the case at bar the plaintiff and the defendant's employees and every other workman on the job, regardless of his position, were engaged in a common employment and had the benefits of the Workmen's Compensation Act. All the employers on the job, including the defendant, had insured under the act, and thereby provided for all employees the benefit of the act. By so doing they became protected from a liability to pay damages to workmen and employees injured while within the scope of their common employment."

6. The plaintiff relies on Pimental v. John E. Cox Co., Inc., 1938, 299 Mass. 579, 13 N.E.2d 441. The facts in that

4. See footnote 3.

case, however, are materially different from those in the case at bar. There the parties stipulated that the owners, Cook Brothers, were *exclusively* engaged in a general trucking and freight forwarding business and that they carried workmen's compensation insurance covering their freight forwarding and expressing business. The Court pointed out that, "While the work on which the independent contractors and their employees were engaged might well be described as a common job, there was no 'common employer' unless it was Cook Brothers, and they were not 'insured under the act' with respect to this job of erecting the freight terminal and garage. They were insured upon the 'freight forwarding and expressing business' * * *. It must be taken that the erection of the freight terminal and garage was not covered by their insurance." Since there was no "common employer" insured under the act, the Court held that the plaintiff had the right to maintain his action at common law under G.L. c. 152, § 15.[5]

In Clark v. M. W. Leahy Co., Inc., 1938, 300 Mass. 565, p. 568, 16 N.E.2d 57, p. 59, decided soon after Pimental, the Court stated:

> "The essential thing is the existence of a 'common employer' who is an 'insured person' under section 18 [citing Pimental], and who is having work done by contract in or about premises specified in section 18 * * * which work is part of or process in his trade or business."

See also MacAleese's Case, 1938, 301 Mass. 25, 16 N.E.2d 63, where the Court affirmed an award of workmen's compensation against the insurer of the common employer who was also the owner, and in favor of an employee of an uninsured independent contractor, holding that claimant's work was "part of or process in," the trade or business carried on by the insured owner, and not merely ancillary and incidental thereto.

■ 7. The defendant Collins was engaged in common employment with the insured Holyoke. The defendant therefore cannot be a "person other than the insured" within the meaning of G.L. c. 152, § 15,[6] and the plaintiff not having retained his common law rights has no option to sue the defendant at common law. McPadden v. W. J. Halloran Co., 1958, 338 Mass. 189, 154 N.E.2d 582.

8. The plaintiff therefore is precluded by the Massachusetts workmen's compensation act from bringing this action against the defendant.

9. The complaint is ordered dismissed.