FLOYD ALLEN, EMPLOYEE, RESPONDENT, v. WILLIAM C. RAFTERY, DOING BUSINESS AS SYLVESTER RAFTERY'S SONS PAINTING COMPANY, EMPLOYER, AND STANDARD ACCIDENT INSURANCE COMPANY, INSURER, STANDARD ACCIDENT INSURANCE COMPANY, INSURER, APPELLANT. —174 S. W. (2d) 345.

St. Louis Court of Appeals. Opinion filed October 5, 1943.

544

*J. D. Leritz* for appellant.

*Tyree C. Derrick* for respondent.

BENNICK, C.—This is a proceeding under the Workmen's Compensation Law (Secs. 3689-3766, R. S. Mo. 1939, Mo. R. S. A., secs. 3689-3766). The appeal is by the insurer, Standard Accident Insurance Company, upon the sole ground that its insurance policy issued to the employer did not cover the risk or operation in which the employee was engaged at the time his injury was received, which was the steam cleaning of a building for which the employer had a contract.

The employer is one William C. Raftery, a painting, papering, and decorating contractor, who does business as Sylvester Raftery's Sons Painting Company. The latter was the trade name under which the employer's father had carried on the business until his death in 1929, at which time the employer, who had been his father's foreman, took it over under an arrangement with his brothers that he would support their mother out of the proceeds of the business, and they in return would assist him with anything in the way of money and equipment that he might require. One brother, Richard, served as foreman for the employer, while a second brother, Sylvester, was engaged in the independent business of cleaning buildings under the name of Acme Cleaning Company. In 1940 the Acme Cleaning Company business was transferred by Sylvester to his son Lawrence, with Sylvester himself continuing in business under the name of Raftery-Egan Painting Company.

On May 1, 1940, appellant, Standard Accident Insurance Company, issued to the employer the policy of insurance involved in this proceeding, which was a standard workmen's compensation and employers' liability policy for a term of one year, with an endorsement specifically including the Missouri Workmen's Compensation Law within the obligation of the insuring agreement.

In view of the fact that the sole question on this appeal is whether the policy covered the particular risk or operation in which the employee was engaged at the time his injury was received, a proper consideration of the contentions of the respective parties requires that special regard be had for those provisions of the policy defining the nature and extent of the coverage afforded.

By the first paragraph of the insuring agreements, which paragraph appears at the very outset of the policy, appellant obligated itself as follows:

"To pay promptly to any person entitled thereto, under the Workmen's Compensation Law and in the manner therein provided, the entire amount of any sum due, and all installments thereof as they become due, (1) to such person because of the obligation for compensation for any such injury imposed upon or accepted by this employer under . . . the Workmen's Compensation Law, and (2) for the benefit of such person the proper cost of whatever medical, surgical, nurse or hospital services, medical or surgical apparatus or appliances and medicines, or, in the event of fatal injury, whatever funeral expenses are required by the provisions of such Workmen's Compensation Law. It is agreed that all of the provisions of each Workmen's Compensation Law covered hereby shall be and remain a part of this contract as fully and completely as if written herein, so far as they apply to compensation or other benefits for any personal injury or death covered by this policy, while this policy shall remain in force."

As to employees covered, it was provided that "this agreement shall apply to such injuries sustained by any person or persons employed by this employer whose entire remuneration shall be included in the total actual remuneration for which provision is hereinafter made, upon which remuneration the premium for this policy is to be computed and adjusted."

As to locations covered, it was provided that "this agreement shall apply to such injuries so sustained by reason of the business operations described in said declarations which, for the purpose of this insurance, shall include all operations necessary, incident or appurtenant thereto, or connected therewith, whether such operations are conducted at the workplaces defined and described in said declarations or elsewhere in connection with, or in relation to, such workplaces".

It was further provided that the agreement was subject to certain conditions, among which was a condition stating the basis of the

premium, which was that "the premium is based upon the entire remuneration earned, during the policy period, by all employees of this employer engaged in the business operations described in said declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith, whether conducted at such workplaces or elsewhere in connection therewith or in relation thereto.''

But while initially contemplating that the premium should be based upon the entire remuneration earned by all employees of the employer engaged in the business operations "described in said declarations," etc., it was nevertheless recognized that other operations might be undertaken by the employer during the policy period; and to meet this contingency, in the event other operations should in fact be undertaken, the following clause was immediately added to the condition:

''If any operations as above defined are undertaken by this employer but are not described or rated in said declarations, this employer agrees to pay the premium thereon, at the time of the final adjustment of the premium in accordance with Condition C hereof, at the rates, and in compliance with the rules, of the Manual of Rates in use by the company upon the date of issue of this policy. At the end of the policy period the actual amount of the remuneration earned by employees during such period shall be exhibited to the company, as provided in Condition C hereof, and the earned premium adjusted in accordance therewith at the rates and under the conditions herein specified. If the earned premium, thus computed, is greater than the advance premium paid, this employer shall immediately pay the additional amount to the company; if less, the company shall return to this employer the unearned portion, but in any event the company shall retain the minimum premium stated in said declarations.''

By Condition C, which had to do with the subject of pay roll audit, it was provided that "the company shall be permitted, at all reasonable times during the policy period, to inspect the plants, works, machinery and appliances covered by this policy, and to examine this employer's books at any time during the policy period, and any extension thereof, and within one year after its final expiration, so far as they relate to the remuneration earned by any employees of this employer while this policy was in force.''

It was subsequently provided that "immediately upon the expiration of each successive six month(s) period during the policy period, the assured shall render to the company a statement of the entire remuneration (as defined in said policy) earned by assured's employees during such period; and the assured shall, immediately following the rendering of each such statement, pay to the company the earned premium based upon such statement of remuneration and computed at the rate or rates applicable thereto.''

The policy concluded with the declarations, which gave the location of the employer's workplaces as 5024 Northland Avenue, St. Louis, Missouri, and elsewhere in the State of Missouri.

The employer's operations were classified in the declarations as "painting, decorating or paper hanging, N. O. C. (not otherwise classified) including shop operations; drivers, chauffeurs, and their helpers." For operations so classified, the rate per $100 of remuneration was fixed at $3.93. It was provided that the minimum premium for the policy should be $52, and the estimated advance premium $100.

Following such classification of operations was the provision that "this employer is conducting no other business operations at this or any other location not herein disclosed—except as herein stated: No exceptions."

There is no dispute about the fact that the classification of the employer's operations as "painting, decorating or paper hanging" was a true and accurate classification and description of the operations in which he was engaged at and prior to May 1, 1940, the date when appellant's policy was issued.

While the employer's father, during his lifetime, had engaged in building cleaning as well as in painting, decorating, and paper hanging, the employer, after he took over the business upon his father's death, had restricted himself to the latter character of operations, and had not followed the building cleaning business or done any building cleaning prior to the time that he took the contract out of which this proceeding has arisen. As a matter of fact, the employer had no building cleaning equipment of his own, and frankly admitted that he did not regard himself as an experienced building cleaner.

On August 13, 1940, some three and a half months after the policy of insurance had been issued, the employer entered into three separate contracts for work upon Father Dunne's Newsboys' Home, the first, a contract for painting and varnishing certain portions of the interior; the second, a contract for painting certain portions of the exterior; and the third, a contract to acid brush and steam clean the brick and stonework on both the Washiangton Avenue and the Garrison Avenue sides of the building.

Lacking the men and equipment for the performance of the cleaning contract, the employer arranged with his brother, Sylvester, for men and equipment to be supplied; and pursuant to such arrangement, Sylvester sent over two of his experienced employees, Floyd Allen and Sam Galati, along with certain cleaning equipment belonging to the Acme Cleaning Company. Allen, incidentally, is the claimant in this case, and had been continuously employed by the Acme Cleaning Company since entering its employ the previous year. After about two weeks, Galati quit the job, and was replaced by one Ivan Chapman, who was injured in the same accident as Allen, and is the claimant in a companion case involving the identical

issue regarding the coverage of the policy. One of the issues before the commission was whether the men became employees of the employer, but it is now conceded that the finding of the commission has resolved that question in their favor.

In cleaning the building, the process followed was first to brush chemicals upon the surface of the walls, after which the dirt and chemicals would be removed by steaming the walls with steam generated by a machine called a jenny.

On September 5, 1940, while the men were standing upon a swinging stage which was so constructed as to enable them to raise or lower themselves alongside the walls of the building, one end of the stage gave way in some unexplained manner, causing both men to fall to the ground some forty feet below and be severely injured.

In due time Allen filed his claim for compensation, and after prolonged hearings before the commission was given an award of $20 a week for two hundred weeks; $100 for disfigurement; and $1816.80 for medical aid not furnished by the employer or insurer. Accompanying the award was a finding that the employer's liability was fully covered by Standard Accident Insurance Company as insurer.

Following the entry of such award, Standard Accident Insurance Company alone appealed to the circuit court; and the award being in all respects affirmed, its appeal to this court has followed in the usual course.

As already pointed out, the only question on the appeal is whether the policy covered the operation of building cleaning at which the employee was engaged at the time his injury was received. If so, then appellant is primarily and directly liable to the employee for payment of the award of compensation; but if not, then the award should be reversed in so far as it purports to be against appellant as the insurer of the employer's liability under the act.

In determining the scope of coverage of the policy, appellant argues that the provisions of most importance are the "locations covered" clause of the insuring agreements, and the initial clause of the "basis of premium" conditions, which, if read to the exclusion of the rest of the policy, and without regard to the obligation of the act, would have limited its coverage to "the business operations described in said declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith." It would follow, therefore, under such a construction of the policy, that inasmuch as the only operations "described in said declarations" were "painting, decorating or paper hanging," the coverage of the policy would not have been extended to the operation of steam cleaning the building for which the employer had the contract, unless such operation could be said to have been necessary, incident, or appurtenant to, or connected with, the operation of painting and decorating the building, which was contemporaneously undertaken by the employer, and which was unquestionably within the coverage of the policy.

. If the ultimate question of appellant's liability depended solely upon a finding that the steam cleaning of the building was necessary, incident, or appurtenant to, or connected with, the painting of it as undertaken by the employer, we would have grave doubts, to say the least, as to whether the cleaning operation was covered by the policy. The two operations were entirely separate and distinct save as they applied to the renovation of a single building; each was covered by a separate contract; and the performance of the one operation was in no sense indispensable to the accomplishment of the other. The portions of the building to be painted were not the portions to be cleaned, so that it could not be said that the one job was to be done in preparation for the other, or that the one was inferior to the other. Nor, under appellant's construction of the policy, would the requisite intimacy or natural connection between the two operations be established by the fact that a single union or labor organization, the Brotherhood of Painters, Decorators and Paperhangers of America, exercises jurisdiction over building cleaners, as well as over painters, decorators, and paper hangers. While this obviously indicates that in the trade itself all such craftsmen are regarded as following a common, general trade, the union nevertheless recognizes that there are special branches of the trade, and in fact requires a member to transfer his membership to the local union of the special branch of the trade in which he is engaged in a locality where such a union exists.

The truth of the matter is, however, that appellant not only misconstrues its policy, but also misconceives the nature of its liability as insurer.

It was the wise legislative purpose, in the enactment of the compensation law, to see to it that employees subject to the act should be at all times protected in their right to compensation; and to this end there was included the provision (Sec. 3713, R. S. Mo. 1939, Mo. R. S. A., sec. 3713) that "every employer electing to accept the provisions of this chapter, shall insure his entire liability thereunder . . . with some insurance carrier authorized to insure such liability in this state, except that an employer may himself carry the whole or any part of such liability without insurance upon satisfying the commission of his ability so to do." Following this is the further pertinent provision (Sec. 3716, R. S. Mo. 1939, Mo. R. S. A., sec. 3716) that every policy of insurance against liability under the act shall be in accordance with the provisions of the act, and shall contain an agreement that the insurer accepts all of the provisions of the act, and that the policy may be enforced by any person entitled to any rights under the act as well as by the employer.

Thus it is to be seen that under the positive language of the act, every employer accepting its provisions (save for employers engaged in the mining business) is required to insure his "entire liability thereunder" with some insurance carrier, subject only to the exception

that he may himself carry the whole or any part of his liability as a self-insurer "upon satisfying the commission of his ability so to do." There is no other provision in the act for limiting the scope of the insurance coverage, so that unless the employer receives authority from the commission to become a self-insurer as to a part of his operations, he must procure insurance for his "entire liability" with some insurance carrier authorized to insure such liability in this State. Were the law otherwise, difficult and troublesome questions might frequently arise (just as they have arisen in the case at bar) regarding the insurer's liability or nonliability, depending upon technical classification of operations in the policy; uncertainty would inevitably result as to the proper line of demarcation between those employees protected by the policy and those not entitled to its benefits; instead of the act being simple, plain, and prompt in its administration, such a division of insurance would promote complications, doubts, and unavoidable delays; and, in short, the highly salutary and remedial purpose of the act would be materially frustrated, if employers might be insured as to only a part of their employees, and neither carry insurance nor qualify as self-insurers, in respect to the operations at which the others were engaged. [In re Cox, 225 Mass. 220, 114 N. E. 281.]

The result is, therefore, that when an insurer undertakes to insure the liability of a particular employer under the act, such insurer must not only agree to accept "all" of the provisions of the act, but must be held to insure the employer's "entire liability thereunder," save in so far as the employer may have received authority from the commission to carry any part of his liability without insurance. This for the reason that the act becomes a part of any insurance policy which is written, and itself determines the scope of the insurer's undertaking in any matter involving the claim of an injured employee, whose right to compensation arises under the act, and not under the policy, which, so far as its construction is concerned, is to be given the declared statutory meaning (Romano v. Didonato, 127 N. J. L. 440, 23 Atl. (2d) 256), even though, as between the insurer and the employer, something different may have been actually intended. [Fidelity & Casualty Co. of New York v. Cook, 301 Mass. 305, 17 N. E. (2d) 181.] As our act is written, an injured employee's rights may not be cut down by any pretended limitation of coverage unless there has been due observance of the requirement relating to self-insurance (Wells v. Frutchey, 274 Pa. 305, 117 Atl. 911; Finn v. Phillippi Bros., 211 Minn. 130, 300 N. W. 441); and if any question arises over a policy which, on its face, is valid and in force, the matter is not one for the commission to determine, but is to be adjusted between the insurer and the employer in a proceeding adopted to that purpose. [Brollier v. Van Alstine, 236 Mo. App. 1233, 163 S. W. (2d) 109.]

And not only does the statute contemplate that the insurer's liability shall be coextensive with that of the employer (save in so far as the latter may be authorized by the commission to carry a portion of his risk without insurance), but as a matter of fact, the policy in this case discloses that appellant fully recognized such obligation under the act, and specifically wrote into its policy a coverage broad enough to insure the employer's "entire liability thereunder."

Language could hardly be broader than that found in the very first paragraph of the insuring agreements, where appellant agreed with the employer to pay promptly to any person entitled thereto under the Workmen's Compensation Law, the entire amount of any sum due to such person, including the proper cost of medical care, "because of the obligation for compensation for any such injury imposed upon or accepted by this employer" under the act. Moreover, as to employees covered, it was provided that the agreement should apply to any "person or persons employed by this employer," upon whose entire remuneration the premium for the policy was to be computed and adjudged.

It is true that for initially determining the basis of the premium, it was provided that the premium should be based upon the entire remuneration earned, during the policy period, by all employees of the employer engaged in the business operations "described in said declarations together with all operations necessary, incident or appurtenant thereto, or connected therewith," but it was immediately recognized that the employer might undertake operations "not described or rated in said declarations," in which event it was agreed that the employer, at the time of the final adjustment of the premium, should pay the premium thereon at the rates, and in compliance with the rules, of the Manual of Rates in use by appellant upon the date of the issuance of the policy. In other words, regardless of appellant's present insistence, it was never contemplated that the coverage of the employer's liability (even if it had been possible under the act) should in all circumstances be restricted to the precise operations at which he was engaged at the time the policy was issued, but instead it was agreed that if he should subsequently undertake other operations during the policy period, his liability should in like measure be covered, subject only to his obligation to pay the proper premium computed at the rates which were applicable to such operations. The policy seems clear enough upon the point, but even if it were ambiguous, it would merely mean that the doubt should be resolved so as to bring the policy into conformity with the act, which, in turn, is to be liberally construed so as to promote what a prevailing popular sentiment conceived to be the public welfare in the matter of providing compensation for persons injured in industrial accidents. [Sec. 3764, R. S. Mo. 1939, Mo. R. S. A., sec. 3764.]

It follows, therefore, that even though, at the time of the issuance of the policy, the employer was not engaged in any operation not

included in the classification of "painting, decorating or paper hanging," he was nonetheless insured when he undertook the operation of building cleaning, and this without regard to any question of whether or not the cleaning of the building was to be regarded as necessary, incident, appurtenant to, or connected with, the painting operation. Once the cleaning operation was undertaken, the obligation to pay compensation for any injury sustained by accident arising out of and in the course of such operation was one "imposed upon or accepted by this employer" so as to have become the primary and direct liability of appellant in its capacity as insurer. That the employer may owe it an additional premium is a matter to be adjusted between it and the employer, and is of no concern to the employee, whose rights are solely fixed and governed by the act. The only function of the commission with respect to the issue of appellant's liability was to determine whether it had issued a policy to the employer which was in force on the date of the accident; and this being a fact admitted by appellant, and there being no pretense that the employer had qualified to carry any portion of his risk as a self-insurer, the commission had no recourse but to find that the employer's liability was fully covered by the policy.

The judgment of the circuit court affirming the award of the commission should in turn be affirmed by this court; and the Commissioner so recommends.

PER CURIAM:—The foregoing opinion of BENNICK, C., is adopted as the opinion of the court. The judgment of the circuit court is, accordingly, affirmed. *Hughes, P. J.,* and *McCullen* and *Anderson, JJ.,* concur.