248 F.2d 277
 LIBERTY MUTUAL INSURANCE COMPANY, Plaintiff-Appellee,
v.
BORSARI TANK CORPORATION of America and Anheuser-Busch, Inc., Defendants-Appellants, and
Employers Mutual Liability Insurance Company of Wisconsin, Defendant.
 No. 117.
 Docket 24117.
 United States Court of Appeals Second Circuit.
 Argued January 18, 1957.
 Decided September 20, 1957.
 
 1
 COPYRIGHT MATERIAL OMITTED Albert P. Thill, Brooklyn, N. Y., for plaintiff-appellee.
 
 
 2
 William F. McNulty, New York City, for defendants-appellants.
 
 
 3
 Before MEDINA and HINCKS, Circuit Judges, and LEIBELL, District Judge.
 
 
 4
 LEIBELL, District Judge.
 
 
 5
 This is an appeal from a judgment of the United States District Court, Southern District of New York, Dawson, J., in favor of the plaintiff insurance carrier, in the sum of $5,000 (plus costs) against two defendants, Borsari Tank Corporation, and Anheuser-Busch, Inc., after a trial without a jury.[1] The claim against the third defendant, Employers Mutual Liability Insurance Company of Wisconsin, was dismissed on consent at the end of the trial.
 
 
 6
 In 1950 and subsequent thereto, the Borsari Corporation was engaged in the business of installing brewing vats, and did work in many states. It maintained plants and hired employees in three states, New York, New Jersey and Missouri. Liberty Mutual issued a master Workmen's Compensation Policy covering those three states in 1950. When Borsari performed a job in any other state, key men would be sent from its plants to direct and assist in the work.
 
 
 7
 About May 6, 1952 Liberty issued to Borsari a policy of Workmen's Compensation Insurance (No. WC 20-300337-52 N.Y. effective April 1, 1952 for one year) which covered compensation liability of Borsari on work being done in the State of New Jersey for the Anheuser-Busch Corporation.
 
 
 8
 On July 23, 1952, Borsari and Anheuser entered into a contract, whereby Borsari agreed to perform certain additional work for Anheuser at Newark, New Jersey. The contract for the additional work was known as Anheuser's Project 654, and Borsari's Job No. 5207. It was the second job Borsari had undertaken for Anheuser at Newark; the earlier job was known as Borsari Job No. 4910 under a contract containing similar provisions for workmen's compensation insurance. Under the terms of the contract, Anheuser agreed to furnish Borsari (at the expense of Anheuser) liability insurance protecting Borsari "under any Workmen's Compensation Act or other statute or law inposing liability for injuries sustained by [Borsari] employees in connection with work covered by the contract." The trial court properly construed this contract provision to be all inclusive, that it included any compensation liability of Borsari under the laws of Missouri, as well as those of New Jersey.
 
 
 9
 Anheuser obtained from Employers Mutual workmen's compensation insurance insuring Borsari, and Employers Mutual issued and delivered to Borsari a certificate of insurance dated February 2, 1953. The date of the policy itself does not appear. The certificate was silent as to the states included in the coverage, but the master policy, which was issued to and retained by Anheuser, specifically provided that it covered Borsari only for the workmen's compensation liability imposed by the laws of the State of New Jersey.
 
 
 10
 It is alleged by Liberty, that Borsari, acting in good faith, and in order to save a premium charge, and believing it was fully covered by the Employers Mutual policy for its workmen's compensation liability in every state where required, requested Liberty to eliminate from its existing workmen's compensation policy all coverage for injuries to or death of Borsari's employees in connection with the Anheuser job in Newark, New Jersey. Accordingly on December 8, 1952, Liberty issued an endorsement (No. 17) to Borsari's policy reading as follows:
 
 
 11
 "Insurance Not Applicable to Certain Designated Operations
 
 
 12
 "It is agreed that, anything in this policy to the contrary notwithstanding, this policy does not insure as respects injuries (Or death resulting therefrom) sustained by any employees engaged in work directly connected with operations conducted at:
 
 
 13
 "Job #5207, Anheuser Busch, Inc. "Newark, New Jersey."
 
 
 14
 Borsari had made a similar request in 1950 as to Liberty's coverage on Job #4910, and the same course had been followed.
 
 
 15
 On March 11, 1953, a fire occurred at the Anheuser job site in Newark, New Jersey, and as a result three of Borsari's employees, Grainger, Hageman and Manthey, lost their lives. Later Borsari learned that the Employers Mutual policy did not provide coverage for Borsari's liability under the Workmen's Compensation Law of Missouri. V.A. M.S. § 287.010 et seq.
 
 
 16
 The widows of the deceased employees, who were residents of Missouri, filed claims for compensation death benefits against Borsari and Liberty, as insurance carrier, with the Division of Workmen's Compensation, Department of Labor and Industrial Relations for the State of Missouri. The Missouri statute provided more liberal compensation than the New Jersey statute. The claimants had a choice of compensation under either the New Jersey or the Missouri statutes.
 
 
 17
 The contracts of employment of the deceased employees had been made in the State of Missouri and their widows were eligible to recover from Borsari and from Liberty Mutual, its insurance carrier in Missouri, the compensation benefits under the Missouri Workmen's Compensation Law. Under § 287.280 of the Act and under the authority of Allen v. Raftery, 237 Mo.App. 542, 174 S.W.2d 345, Liberty was precluded from denying liability, despite its endorsement of December 8, 1952, issued to Borsari, which excluded coverage with respect to Borsari's employees in connection with the Anheuser job in Newark, New Jersey. Liberty had covered some of Borsari's employees in Missouri and under the statute (§ 287.110, subd. 2) the widows of the Borsari workmen hired in Missouri were similarly protected, although working in another state. On May 19, 1954, each surviving widow received from the Missouri Workmen's Compensation Division a final compensation award of $12,400.00 against Borsari and Liberty, a total of $37,200. The $400.00 of each award was for funeral expenses.
 
 
 18
 The estates of the three deceased employees had instituted common law actions in the State of New Jersey to recover damages from certain contractors for having negligently caused the deaths of these men. While the third party actions were pending, Liberty and Borsari, pursuant to the laws of New Jersey, "asserted liens [by statutory notice] against any recovery by the states,"[2] in the common law actions.
 
 
 19
 The actions in New Jersey were settled for a total sum of $82,500. In the Grainger estate the settlement figure was $30,000; in the Hageman estate $27,500; and in the Manthey estate $25,000. Under the terms of the settlement Liberty was to receive about $15,000 as reimbursement for compensation payments theretofore paid to the surviving widows, and also the right to be released from making further payments under the Missouri awards of May 19, 1954.[3] Liberty alleges that as a condition of receiving its share of the settlement recovery, it was required by the statutes, of Missouri and New Jersey, to pay an attorney's fee of $5,000.00 to the attorneys who represented the estates of the deceased workmen in the third party actions; and that at the time Liberty received its part of the recoveries Liberty paid the $5,000.00 fee by three checks (Ex. 11), dated January 9, 1956, totalling the $5,000. Liberty accordingly has claimed reimbursement of that amount from the defendants, Borsari and Anheuser, in the present action.
 
 
 20
 Liberty's claim against Borsari is that since the latter induced Liberty "to eliminate three state coverage from its compensation policy," on Borsari's representation that it was obtaining similar coverage through another insurance carrier under Borsari's contract with Anheuser, Borsari is liable to Liberty for the loss it sustained by Borsari's failure to do so; and that the $5,000.00 attorneys' fee represents that loss.
 
 
 21
 Liberty claims that it is subrogated to any rights of recovery vested by law in Borsari against Anheuser, and that Anheuser breached its contract with Borsari, by failing to provide proper insurance for Borsari "under any Workmen's Compensation Act," including the State of Missouri. Liberty bases its claim against Anheuser on the subrogation clause of Liberty's insurance policy issued to Borsari and on the general principles of subrogation.
 
 
 22
 Judge Dawson found in favor of Liberty, holding Borsari and Anheuser jointly and severally liable for the $5,000.00 Liberty paid as its proportionate share of the attorneys' fees in the New Jersey third party actions.
 
 
 23
 The most important question presented on his appeal is whether the payment of the $5,000.00 by Liberty Mutual was a "voluntary" payment, or a payment that Liberty was obliged to make by statute. If the payment was voluntary, Liberty Mutual would have no basis for a claim of recoupment. The nature of the payment, voluntary or otherwise, is governed by the provisions of the statute, applicable as of the date the recoveries in the third party actions were effected.
 
 
 24
 Although Liberty Mutual and Borsari filed their statutory notice in the third party actions instituted in the New Jersey State Court, pursuant to New Jersey law, their right to recover on their lien, the amount of their recovery and the conditions attached thereto, are governed by the law of the State whose Compensation Act was invoked by the claimants in obtaining their compensation awards.[4] In this case it would be the law of Missouri. However, the trial of this case and its decision proceeded on the assumption that the Compensation Law of New Jersey applied. The New Jersey statute required contribution by the compensation carrier towards the expenses and attorney's fee of the plaintiff in a third party action. It was in effect on all pertinent dates.
 
 
 25
 Prior to August 29, 1955, the law of Missouri, § 287.150, made no provision for the deduction of any part of the attorney's fees and expenses of the third party action from the amount payable by way of reimbursement to the employer of the insured employee, or to the employer's insurance carrier, out of the amount recovered by the estate of a deceased employee in the third party action. The employer or its insurance carrier was entitled to be reimbursed for the full amount of the compensation award without any deduction.
 
 
 26
 If the payment of $5,000.00 by Liberty Mutual as its share of the attorney fees for the recovery made in the third party action is governed by the provisions of subdivision 2 of § 287.150 which went into effect August 29, 1955 (not July 29th as stated in Liberty's brief), i. e., if the recoveries in the third party actions were effected on or after that date, then under the language of subdivision 2, the payment of the $5,000.00 would be required by statute and would not be voluntary.
 
 Subdivision 2 reads as follows:
 
 27
 "2. Whenever recovery against the third person is effected by the employee or his dependents, the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee. After the expenses and attorneys fee has been paid the balance of the recovery shall be apportioned between the employer and the employee or his dependents in the same ratio that the amount due the employer bears to the total amount recovered, or the balance of the recovery may be divided between the employer and the employee or his dependents as they may agree. Any part of the recovery found to be due to the employer, the employee or his dependents shall be paid forthwith and any part of the recovery paid to the employee or his dependents under this section shall be treated by them as an advance payment by the employer on account of any future installments of compensation."
 
 
 28
 In the first clause of the first sentence "Whenever recovery against the third person is effected by the employee or his dependents" the word "whenever" means "if" or "in the event of." State ex rel. Kansas City v. School Dist. of Kansas City, 333 Mo. 288, 62 S.W.2d 813, 817; Morse v. Custis, 38 Cal.App.2d 573, 101 P.2d 702, 704. Note the words "recovery" and "is effected." The date the terms of the settlement were arrived at, is not the date the recovery was effected. The date the moneys were actually paid over in settlement of the third party action is the date the recovery is effected.
 
 
 29
 The second clause of the first sentence — "the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee" — contains the mandatory words "shall pay." A payment made under that clause could not be considered as "voluntary." The said second clause also indicates when the payment of a share of the expenses is to be made. It is to be paid "from his (the employer's or his insurer's) share of the recovery," and it is not payable until the "recovery" has been "effected." The date the compensation insurer (Liberty), as subrogee of the employer, received its share of the money paid in settlement of the third party action would not necessarily be the determinative date; nor would the date Liberty paid its share of the attorney's fee in the third party action be the determinative date, in deciding whether subdivision 2 of § 287.150 of the Missouri statute is applicable. As hereinabove indicated that subdivision did not go into effect until August 29, 1955.
 
 
 30
 In the case at bar the employer's insurer and subrogee (Liberty Mutual) which was obligated to pay the amount of the award made by the Missouri Compensation Board to the estates of the three deceased employees, actually paid the $5,000.00, as its "proportionate share of the expenses of the recovery, including a reasonable attorney fee." The reasonableness of the $5,000.00 payment is not disputed. The trial record does not show when the recoveries were actually effected in the third party actions. A letter to Judge Dawson, dated February 24, 1956, sent by one of the attorneys after the trial, shows the total amounts of the recoveries in the third party actions by the estates of the three deceased employees, and that the payments were made by the Employers Mutual Liability Insurance Company of Wisconsin on behalf of the defendants named in the third party actions.[5]
 
 
 31
 The record is silent as to the dates the recoveries were effected in the third party actions; the dates the attorney for the estates actually received the checks in settlement of the action representing the estates' share of the amount paid; the dates those checks were deposited and paid; the dates Liberty Mutual received and deposited the checks paid in satisfaction of its liens in said actions.
 
 
 32
 This defect in the trial record we sought to have supplied by a stipulation of the attorneys making a part of the record on appeal in the case, photostats of the checks (face and reverse sides) given by Employers Mutual in payment of the amounts of the settlement of the third party actions. The attorney for the defendants obtained photostats of the checks and was willing to make such a stipulation. But the attorney for Liberty Mutual refused to so stipulate. These checks should show when "the recovery" was "effected" in the third party actions in relation to August 29, 1955, the date when subdivision 2 of § 287.150 of the Missouri statute became effective. If the recoveries were effected prior to August 29, 1955, Liberty's payment of the $5,000.00 was not required by the Missouri statute, was "voluntary" and is not recoverable in this action.5a
 
 
 33
 The discussion of the Missouri statute in Zasslow v. Service Blue Print Company, March 20, 1956, 288 S.W.2d 377, 379, is helpful, although subdivision 2 of § 287.150 was held not applicable because, in that case, both the recovery in the third party action and the making of the compensation award had been had prior to the effective date of subdivision 2 of § 287.150.[6]
 
 
 34
 The Court adopted verbatim the opinion of the Commissioner from which the following paragraphs are quoted:
 
 
 35
 "In short, the principal question in this case is whether an employer who is liable to pay compensation to the dependent of a fatally injured employee is entitled to a subrogation credit out of the proceeds of a third party action by the employee's dependent, without proportionately sharing the cost of attorneys' fees."
 
 
 36
 "The Act, as then written,[7] treated the recovery as a fund charged first with the payment of the expenses of making the recovery and then with the compensation paid by the employer, and the employee was entitled only to whatever excess remained. * * * it was a matter of indifference whether the recovery was obtained against the third party by the employer or by the employee, and no reason is apparent why a different method of distribution should be adopted in the one case from that directed in the other. The expenses of making the recovery were a first charge on the fund by the terms of § 287.150, supra, which fixed the equities of the situation. The employer was entitled to receive credit for the full amount of appellant's net recovery of $6,000, without deduction of respondents' proportionate share of appellant's attorneys' fees. * * * The distribution was properly held to be governed by § 287.150, supra, which was the only section of the Act evidencing the legislative intent relating to the distribution of third party recoveries in effect at the time the facts in the instant case occurred."
 
 
 37
 "The Sixty-eighth General Assembly repealed § 287.150, supra, and in lieu thereof enacted a new § 287.150 consisting of two paragraphs, the first of which is a reenactment of § 287.150, supra, verbatim and the second of which provides that whenever recovery against a third person is effected by the employee or his dependents `the employer shall pay from his share of the recovery a proportionate share of the expenses of the recovery, including a reasonable attorney fee', as now sought to be enforced by appellant. Laws 1955, p. 598, H.B. No. 335, § 1. This provision, however, was not in effect when the instant facts occurred. It did not become effective until 90 days after May 31, 1955. This court cannot give it retroactive effect."
 
 
 38
 For a discussion of a comparable situation dealing with the Workmen's Compensation Act of New Jersey, see Savitt v. L. & F. Const. Co., 16 N.J.Misc. 462, 1 A.2d 752, modified 17 N.J.Misc. 65, 4 A.2d 692, writ of certiorari denied 123 N.J.L. 149, 8 A.2d 110, judgment modified and remanded for further proceeding, 124 N.J.L. 173, 10 A.2d 728; and Feinsod v. L. & F. Const. Co., 16 N.J. Misc. 514, 2 A.2d 357, affirmed 17 N.J. Misc. 65, 4 A.2d 692.
 
 
 39
 If the $5,000 payment by Liberty was not "voluntary," as that term has been defined in this opinion, the next question to be considered is whether Liberty Mutual has a claim to be reimbursed in that amount by Borsari or Anheuser-Busch, or by both. The trial court's opinion holds Borsari and Anheuser-Busch jointly and severally liable.
 
 Liberty's Claim Against Borsari
 
 40
 Liberty Mutual was put in the position where it was obligated to pay the awards under the Missouri Workmen's Compensation Law (despite its rider excluding the Newark job from coverage under Liberty Mutual's policy) by reason of certain representations of Borsari that Anheuser-Busch had obtained the necessary compensation insurance for Borsari under Anheuser's contract with Borsari, as a result of which Liberty at Borsari's request cancelled its compensation coverage of Borsari on the Anheuser job at Newark, New Jersey. Borsari is not excused by reason of the fact that when it notified Liberty to cancel its compensation coverage on the Anheuser job, Borsari actually believed that it was fully covered under another policy procured by Anheuser under its contract with Borsari. What Liberty was held for under Missouri law was Borsari's obligation as employer. Borsari should be required to reimburse Liberty on the theory of implied contract arising out of Borsari's representations to Liberty, as to Borsari's coverage under the compensation policy Anheuser procured under its contract with Borsari, when Borsari requested Liberty to cancel its coverage of Borsari on the Anheuser job. This resulted in an implied agreement by Borsari that Liberty should be exonerated from any compensation liability arising out of the Anheuser job. The principles of implied contract would require under those circumstances that Borsari stand the loss and not Liberty Mutual. United States Fidelity & Guaranty Co. v. Taylor, 132 Md. 511, 104 A. 171; Gise v. Fidelity & Casualty Co., 188 Cal. 429, 206 P. 624, 22 A.L.R. 1476; Janes Contracting Co. v. Home Life & Accident Co., Tex. Com.App., 260 S.W. 839; DeCampos v. State Compensation Ins. Fund, 122 Cal. App.2d 519, 265 P.2d 617. Liberty was not negligent in relying on Borsari's representations. As a matter of public policy, in the interest of the workmen, the Missouri statute held Liberty liable for the awards equally with the employer, Borsari. But there is no public policy that requires that the burden of the loss should be shifted to Liberty, despite the arrangement between Borsari and Liberty for a cancellation of the coverage.
 
 
 41
 Liberty's measure of damages would not be the loss in premium which Liberty would have received from Borsari if Liberty's policy had not been changed to eliminate compensation coverage on the Anheuser job. Liberty's actual out of pocket loss (the $5,000 item) would be Liberty's measure of damages, as the District Court held. Larson, Workmen's Compensation Law (1952) § 94.10. United States Fidelity & Guaranty Co. v. Taylor, supra.
 
 Liberty's Claim Against Anheuser
 
 42
 Liberty bases its action against Anheuser on the theory that as Borsari's insurance carrier, it is subrogated to Borsari's claim for breach of contract against Anheuser-Busch (1) by virtue of the subrogation clause contained in the master policy of insurance issued by Liberty to Borsari, and (2) by virtue of the common law principles of subrogation.
 
 
 43
 Although the Missouri Workmen's Compensation Act is silent as to the right of an injured employee or his dependents to sue a tortious third party it has been held that the Missouri Compensation Act did not take away the employee's common-law right against an offending third person. McKenzie v. Missouri Stables, Inc., 225 Mo.App. 64, 34 S.W.2d 136; Reynolds v. Grain Belt Mills Co., 229 Mo.App. 380, 78 S.W.2d 124; and Schumacher v. Leslie, 360 Mo. 1238, 232 S.W.2d 913. It was pointed out in Bunner v. Patti, 343 Mo. 274, 121 S.W.2d 153, 155, that while § 287.150 subrogates the employer to the rights of the employee against a third person: "yet it is settled that the employee also may sue, independent of the statute, or the two may sue together; and this is true notwithstanding the employee has already claimed and collected compensation under the Act for the same injuries from his employer. Anzer v. Humes-Deal Co., 332 Mo. 432, 58 S.W.2d 962." See also, Schumacher v. Leslie, supra; McKenzie v. Missouri Stables, supra.[8]
 
 
 44
 Liberty Mutual made the following subrogation clause part of its Workmen's Compensation insurance policy issued to Borsari:
 
 
 45
 "Subrogation The Company shall be subrogated in case of any payment under this Policy, to the extent of such payment, to all rights of recovery therefor vested by law either in this Employer, or in any employee or his dependents claiming hereunder, against persons, corporations, associations or estates."
 
 
 46
 The employer and his insurer stand in the position of the employee or the dependents of a deceased employee who have received payments under the policy; and they acquire such rights, and only such rights, against a third person whose negligence caused the injury, as the injured employee or the dependents of a deceased employee would have had against the third person. The sole test of liability of the third party to the subrogated employer or his insurance carrier is the liability of the third party to the injured employee or to his dependents. General Box Co. v. Missouri Utilities Co., 331 Mo. 845, 55 S.W.2d 442; Gayhart v. Monarch Wrecking Co., 226 Mo.App. 1118, 49 S.W.2d 265. See also Goldschmidt v. Pevely Diary Co., 341 Mo. 982, 111 S.W.2d 1, at page 4; Superior Minerals Co. v. Missouri Pac. R. Co., 227 Mo.App. 1044, 45 S.W.2d 912.
 
 
 47
 The employer and its insurance carrier are subrogated only to tort claims existing in favor of the injured employee or his dependents, and not to contract claims existing in their favor. Hanson v. Norton, 340 Mo. 1012, 103 S.W.2d 1; and Schumacher v. Leslie, supra, enlarging the Hanson holding. See also 71 Corpus Juris [Workmen's Compensation] § 1609, page 1570.
 
 
 48
 The employer's right of subrogation to the tort claims existing in favor of the injured employee or his dependents against third persons is conferred by the first sentence of § 287.150, subd. 1 of the Missouri Compensation statute, which provides in part that "where a third person is liable to the employee or to the dependents, for the injury or death, the employer shall be subrogated to the right of the employee or to the dependents against such third person." Paragraphs 8 and 9 of the Missouri Workmen's Compensation and Employer's Liability Endorsement, attached to the insurance policy, issued by Liberty to Borsari, relate to claims arising from injuries to employees of Borsari.[9]
 
 
 49
 It is Liberty Mutual's contention that the subrogation clause of the policy it issued to Borsari is not limited to the rights of its insured, Borsari, against third party tort-feasors whose negligence resulted in the death of Borsari's employees, but includes also any right of action Borsari may have against Anheuser-Busch based on the latter's breach of its contract to obtain for Borsari compensation coverage under the applicable compensation laws of any State, including the State of Missouri. We are of the opinion that the subrogation clause of the policy, when considered in relation to the purpose of the insurance and the other provisions of the policy, does not include within its scope Borsari's right of action against Anheuser-Busch for breach of contract. The purpose of the clause in the policy was to subrogate the insurer to the employer's right of action against any third party tort-feasor who injured or caused the death of insured's employee, whether that tort-feasor was a natural person, a corporation, an association, or an estate. The right of subrogation which an employer or his compensation insurer has against a third party whose negligence has resulted in injury to the employee and the resultant payment of a compensation award under a State statute, is a right created by the compensation statute. The subrogation clause of the policy gave the insurance carrier the right which the insured employer had under the statute. The employer had no common-law right of subrogation against the third party tort-feasor. McKenzie v. Missouri Stables, Inc., supra, 34 S.W.2d at page 138; Crab Orchard Imp. Co. v. Chesapeake & O. Ry. Co., 4 Cir., 115 F.2d 277 at page 279.
 
 
 50
 The question remains as to whether under common law principles of subrogation, Liberty Mutual has a right of subrogation to Borsari's right of action against Anheuser-Busch for breach of contract. Liberty Mutual has been required to pay something that it would not have had to pay, if Anheuser-Busch had fully performed its obligation to Borsari and furnished Borsari a policy that would cover Borsari's employees with workmen's compensation under the Missouri statute. Anheuser-Busch provided compensation insurance coverage for Borsari's employees only under the laws of New Jersey. The deceased employees' dependents elected to claim compensation under the laws of Missouri, and under the Missouri law Liberty Mutual was held liable for the compensation awards. The Missouri Commission's additional findings (dated February 18th, 1955) contain the following paragraph:
 
 
 51
 "We further find that Borsari Tank Corporation of America, employer herein, had insured its entire liability under the Missouri Workmen's Compensation Law as provided in Section 287.280, RSMo 1949, with Liberty Mutual Insurance Company as its insurance carrier, a duly authorized insurer; that on the date of this accident said employer had not qualified as a self-insurer as to any of its operations; and that, therefore, Liberty Mutual Insurance Company was the insurer of this employer without reservation and is primarily liable to the dependent of deceased employee. Allen v. Raftery [237 Mo.App. 542], 174 S.W.2d 345; Harris v. Pine Cleaners, Inc. [Mo. App.], 274 S.W.2d 328, loc. cit. 332."
 
 
 52
 Liberty Mutual would not have been obliged to pay the awards under the Missouri law, if Anheuser-Busch had covered Borsari with a proper compensation policy including liability under the Compensation Law of Missouri. Bosari Corporation would not have been a qualified self-insurer under Missouri law, but it would have been a properly insured employer and Liberty Mutual's release from coverage would have been recognized.
 
 
 53
 Although there was no privity between Liberty Mutual and Anheuser-Busch, Liberty Mutual's dealings with Borsari in cancelling its coverage on the Anheuser-Busch, Newark, New Jersey, job were in reliance on Borsari's representation that Anheuser-Busch had obtained proper insurance coverage of Borsari's employees on the Anheuser-Busch job at Newark, New Jersey. Borsari's representations were made in good faith. The certificate of insurance it received from Anheuser-Busch contained the statement "Full coverage under workmen's compensation law. As designated in endorsement for coverage under paragraph One(b)," of the policy which Anheuser-Busch retained.
 
 
 54
 The fault was on the part of Anheuser-Busch in not obtaining proper compensation coverage for Borsari. Applying equitable principles to the fact situation in this case, the loss should fall on Anheuser-Busch, not on Liberty Mutual. And in order to place the loss where it belongs, Liberty Mutual should, in equity, be subrogated to Borsari's right of action against Anheuser-Busch for breach of contract. In Gerseta Corporation v. Equitable Trust Co., 241 N.Y. 418, 425-426, 150 N.E. 501, 504, 43 A. L.R. 1320, Judge Pound writing for the Court stated the equitable basis of the doctrine of subrogation:
 
 
 55
 "Subrogation, an equitable doctrine taken from the civil law, is broad enough to include every instance in which one party pays a debt for which another is primarily answerable, and which in equity and good conscience should have been discharged by the latter, so long as the payment was made either under compulsion or for the protection of some interest of the party making the payment, and in discharge of an existing liability."
 
 
 56
 See also Pittsburgh-Westmoreland Coal Co. v. Kerr, 220 N.Y. 137, 144, 115 N.E. 465, 467, holding that the doctrine of equitable subrogation "includes so wide a range of subjects that it has been called the `mode which equity adopts to compel the ultimate payment of a debt by one who in justice, equity, and good conscience ought to pay it.'"
 
 
 57
 In the case at bar it appears that both Liberty Mutual and Anheuser-Busch were under a legal obligation to protect Borsari against liability resulting from injuries sustained by Borsari's employees in connection with the work performed by Bosari's employees at the Newark job. Liberty Mutual was so bound by virtue of the public policy of the State of Missouri, as hereinabove explained; Anheuser-Busch by virtue of the provisions of its contract with Borsari. Although both were legally bound, yet as between themselves, Anheuser-Busch was primarily liable, because it was the breach of its contract with Borsari that brought about the resultant loss to Liberty Mutual. Under the circumstances the equities strongly favor Liberty Mutual.
 
 
 58
 Since the two defendants, without separate representation, have presented a common defense without any claim of right as against each other, and since each is liable to the plaintiff, a joint and separate judgment is appropriate.
 
 
 59
 At the new trial the trial court will be in a position to receive in evidence the checks that were given in settlement of the three third-party actions. It may also hear and receive any other proof that will show when the recoveries were effected in those actions. It will then apply the Missouri Compensation statute, in force at the time the recoveries were effected, in determining whether Liberty Mutual's payment of the $5,000 was "voluntary."
 
 
 60
 At the new trial the Court may also inquire, if the issue is raised, as to the correctness of the amount of $5,000, to ascertain if it was in excess of the amount Liberty Mutual should have paid under the Missouri statute. Apparently that issue was not raised before Judge Dawson, as his opinion indicates.
 
 
 61
 Reversed and remanded for further proceedings not inconsistent with this opinion.
 
 
 
 Notes:
 
 
 [1]
 The opinion of Judge Dawson is reported in 139 F.Supp. 641
 
 
 [2]
 Title 34, Chapt. 15, Section 40(d) of the New Jersey statutes (the New Jersey Labor and Workmen's Compensation Act) at that time provided:
 "(d) If at any time prior to the payment by the third person or corporation to the injured employee or his dependents, the employer or his insurance carrier shall serve notice, as hereinafter provided, upon such third person or corporation that compensation has been applied for by the injured employee or his dependents it shall thereupon become the duty of such third person or corporation, before making any payment to the injured employee or his dependents, to inquire from such employer or his insurance carrier the amount of medical expenses incurred and compensation theretofore paid to the injured employee or to his dependents. Where such notice shall have been served, it shall further become the duty of such third person or corporation, before making any payment as aforesaid, to inquire from such injured employee or his dependents the amount of the expenses of suit and attorney's fee, or either of them in the action or settlement of the claim against such third person or corporation. Thereafter, out of that part of any amount about to be paid in release or in judgment by such third person or corporation on account of his or its liability to the injured employee, the employer or his insurance carrier shall be entitled to receive from such third person or corporation so much thereof as may be due the employer or insurance carrier pursuant to subparagraph (b) or (c) of this section. Such sum shall be deducted by such third person or corporation from the sum to be paid in release or in judgment to the injured employee or his dependents and shall be paid by such third party or corporation to the employer or his insurance carrier. Service of notice, hereinbefore required to be made by the employer or his insurance carrier upon such third person or corporation, shall be by registered mail, return receipt and in the case of a corporation shall be mailed to the registered office of such corporation."
 "(b) If the sum recovered by the employee from the third person or corporation is equivalent to or greater than the liability of the employer or his insurance carrier under this statute, the employer or his insurance carrier shall be released from such liability and shall be entitled to be reimbursed, as hereinafter provided, for the medical expenses incurred and compensation payments theretofore paid to the injured employee or his dependents less employee's expenses of suit and attorney's fees as hereinafter defined."
 "(e) As used in this section, `expenses of suit' shall mean such expenses, but not in excess of two hundred dollars, and `attorney's fee' shall mean such fee, but not in excess of thirty-three and one-third per centum (33 1/3%) of that part of the sum paid in release or in judgment to the injured employee or his dependents by such third party or corporation to which the employer or his insurance carrier shall be entitled in reimbursement under the provisions of this section, but on all sums in excess thereof, this percentage shall not be binding."
 
 
 [3]
 The $12,000 award to each widow was payable in installments over 400 weeks. The method of payment of the award and the fee of the attorney in the compensation proceeding, is set forth in detail in the Commission's order of February 15, 1955, which affirmed on review the award of the referee, dated May 19, 1954, as modified
 
 
 [4]
 In Privetera v. Hillcrest Homes, Inc., 29 N.J.Super. 591, 103 A.2d 55, an attorney brought an action to impress an attorney's lien upon that portion of the monies received in a third-party action settlement in New Jersey, as representing the amount of an award by Workmen's Compensation Board of the State of New York, based upon N.J.S.A. 34:15-40(b) and (e), which provided that after the recovery by the employee from the third person of a sum greater than the liability of the employer or his insurance carrier, under this statute, reimbursement shall be made for medical expenses incurred and compensation payments, less employee's expenses of suit not in excess of $200, and attorney's fee not in excess of 33 1/3% of that part of the sum paid in release to the injured employee by the third party. The compensation carrier contended that it was entitled to the full amount of its lien without any deduction, in accordance with Article 2, Section 29, Paragraph 1 of the Workmen's Compensation Law of the State of New York, McK.Consol.Laws, c. 67, which makes no provision for the deduction of the employee's expenses of suit and attorney's fee in the third party action. The court, holding for the insurance carrier, stated [103 A.2d at page 57]: "The statutory provisions with respect to expenses of suit and attorney's fees, upon which petitioner relies, expressly relate to payments made by an insurance carrier `under this act,' referring, of course, to the New Jersey Workmen's Compensation Act. Plaintiff proceeded under the provisions of article 2, section 29 of the Workmen's Compensation Law of New York, which authorized him to bring the third-party action, and he is, accordingly, bound by all of the provisions of that law — he cannot take advantage of the portion he likes and disregard those portions of which he disapproves."
 
 
 [5]
 The trial of the case was had on February 23, 1956. On the same day the attorney for Liberty Mutual caused to be filed a "further amended and supplemental complaint" which had been served upon opposing counsel by mail on November 23, 1955
 Paragraphs "Twenty-Fifth," "Twenty-Sixth" and "Twenty-Seventh" of that pleading read as follows:
 "Twenty-Fifth: That plaintiff and Borsari, pursuant to the Laws of the State of New Jersey, asserted liens against any recovery by the aforesaid estates of Borsari employees in their said common law actions in the State of New Jersey.
 "Twenty-Sixth: That the estates of the said Borsari employees settled their common law actions in the State of New Jersey, and plaintiff's lien was honored, and plaintiff and Borsari were credited and paid all money plaintiff was obligated to pay the dependents of the three Borsari employees under the Missouri Compensation Law.
 "Twenty-Seventh: That under the Laws of the States of both Missouri and New Jersey, the plaintiff and Borsari, as a condition of recovering their lien, must pay an attorney's fee to the attorney for the said estates, and pursuant to said Laws plaintiff paid the attorney for the said estates $5,000.00 as his fee for recovering the said lien, and such was a reasonable amount." (Emphasis supplied.)
 It would appear from the above allegations that the recoveries were effected in the third-party actions at some time prior to November 23, 1955, and that Liberty Mutual had paid the $5,000 prior to that date. But Exhibit 11, the three checks totalling the $5,000 issued by Liberty Mutual to the attorney of record for the estates of the three deceased workmen, are each dated January 9, 1956.
 Concerning Exhibit 11, the record discloses the following colloquy between the Court and the attorney for Liberty Mutual (S.M. 66):
 "The Court: In other words, you didn't get your money until you agreed to pay the $5,000.
 "Mr. Thill: That is right, we exchanged checks, and we didn't pay that voluntarily, Judge."
 On page 65 of the Stenographic Minutes, Mr. Thill had stated to the Court: "We fought the payment of this $5,000."
 5a. The opinion of the trial court states:
 "It has not been urged that the amount of the attorney's fee was excessive or improper, nor has any evidence been adduced that Liberty Mutual could have received reimbursement of its lien from the third party claims without payment of the attorney's fee to the attorney for the estates of the decedents." [139 F. Supp. 641, at page 645.]
 
 
 [6]
 In the Zasslow case the employee was killed through the negligence of a third party on June 19, 1952. His widow employed her own attorneys and on August 13, 1952, filed a common law action against the negligent third party, which resulted in a judgment of $9,000 for the widow. Of this sum, $3,000 was paid to her lawyers for their services in making the recovery. On April 1, 1953, she filed a claim under the Workmen's Compensation Act of Missouri, for $9,553, basing her claim upon an average weekly wage of $45.77. The employer filed an answer alleging that the deceased employee's weekly wage was $30.18, and that the claim was extinguished by a subrogation credit of $6,000. Following a hearing, the referee awarded the widow death benefits of $20.12 per week (2/3 of $30.18) for 300 weeks, or $6,036, plus a funeral bill in the sum of $400 and a doctor's bill in the sum of $47.00. The aggregate award was for $6,483, less a subrogation credit of $6,000. The widow appealed, claiming that the Commission should have given the employer a credit of only $4,322 and not $6,000. She complained that the method of computation adopted below compelled her to assume the entire burden and pay the entire cost of recovering the judgment of $9,000 against the negligent third party
 
 
 [7]
 That is, prior to the addition of subdivision 2 to § 287.150, effective August 29, 1955. § 287.150 was amended by adding thereto subdivision 2 and the amendment became effective August 29, 1955. Laws of Missouri 1955, 68th General Assembly, page 598. [H.B. #335, § 1] It took effect ninety days after May 31, 1955, the date of the adjournment of the Legislature. See § 1.130, Missouri Revised Statutes 1949, V.A.M.S. See also Vernon's Annotated Missouri Statutes, § 287.150
 
 
 [8]
 The Court, in McKenzie, 34 S.W.2d at page 139, made the following observation:
 "What the section [287.150] does contemplate, beyond peradventure of doubt, is that both the employer and the employee have beneficial interests in the cause of action, the employer being interested in securing indemnity for himself for the amount of compensation payable by him, and the employee being interested in obtaining whatever surplus may remain after his employer has been indemnified. Consequently, without regard to where the pure legal title to the cause of action may be, either the employee or the employer is plainly a real party in interest, and, of whatever sum he recovers from the third party, he is, in part at least, the trustee of an express trust, the employee to see that the employer's right of subrogation is protected, and the employer to see that the employee secures the surplus remaining after he himself is indemnified.
 * * * * *
 "It follows, therefore, that the employer may sue in his own name without joining the injured employee, not only because he is the trustee of an expressed trust in the manner, that we have pointed out, but also because the subrogation statute seems to give him that right. But it follows with equal propriety that the employee, who in any event is the beneficiary contemplated by the statute, may also sue without joining the employer."
 
 
 [9]
 Paragraphs 8 and 9 of the Missouri Workmen's Compensation and Employer's Liability Endorsement, attached to the policy in question, provided:
 "8. The first sentence of Paragraph One (b) of the policy is amended to read: `To indemnify this Employer against loss by reason of the liability imposed upon him by law for damages on account of such injuries sustained by employees within the territorial limits of the United States of America or the Dominion of Canada."
 "9. The words `liability imposed upon him by law for damages on account of such injuries' in Paragraph One (b) of the Policy are inclusive of the liability imposed upon this Employer by reason of a suit or claim brought against him by another to recover the amount of damages obtained from such other by an employee of this Employer for injuries sustained by such employee arising out of and in the course of his employment."
 
 
 
 62
 MEDINA, Circuit Judge (concurring and dissenting).
 
 
 63
 My only objection to my brothers' disposition of this case concerns Liberty Mutual's claim against Anheuser-Busch. I do not understand the theory on which Liberty is said to be subrogated to Borsari's contract right against Anheuser. My brothers say simply that it is equitable that Anheuser should reimburse Liberty, since Liberty would have sustained no loss had Anheuser performed its contract. This is only another way of saying that my brothers consider, by and large and under all the circumstances of the case, that it is fair and reasonable to compel Anheuser to reimburse Liberty. But I have no confidence in this vague and slippery approach. Indeed, I do not believe that under our system of jurisprudence, judges have the right to decide cases purely on the basis of what may strike an individual judge as the right thing to do, independent of any rule of law. We are not mere philosophers, nor is it our function to dispense a priori justice between the parties, but rather to determine and apply the law as best we can.
 
 
 64
 As the District Court had jurisdiction of this case by virtue of the diversity of citizenship of the parties and we are to decide a substantive question of subrogation vel non, there necessarily arises in limine the conflict of laws problem of what law governs. What law are we talking about? Is it some general concept of justice residing in nubibus? Or is it a "federal general common law," which we were told in Erie Railroad Co. v. Tompkins, 304 U.S. 64, 78-80, 58 S.Ct. 817, 822, 82 L.Ed. 1188, no longer exists and never did exist, although even the Supreme Court at one time thought it did? My brothers give no answers to these questions. Nor do they say they are applying New York law or Missouri law.
 
 
 65
 We must first determine what rule of conflicts the New York courts would apply, as the case was tried in a United States District Court sitting in the State of New York, and we must find "what the state law is, not what it ought to be." Klaxon Co. v. Stentor Elec. Mfg. Co., 313 U.S. 487, 61 S.Ct. 1020, 1022, 85 L.Ed. 1477. But neither the parties nor the Court below has told us what that law is. We may assume that either New York law or Missouri law would be held to provide the controlling substantive rule.
 
 
 66
 Such research as I have been able to do in the limited time available, however, would tend to indicate that there is no principle or group of principles heretofore applied by the courts either in New York or Missouri which can fairly be said to provide a foundation for the conclusion that Liberty has a right of subrogation to Borsari's contractual rights against Anheuser.
 
 
 67
 Surely such general statements as are quoted in the majority opinion from certain New York cases are too frail a reed to lean upon. In their context they support the decisions arrived at, in vacuo and by themselves they are no more than pious thoughts, glittering generalities, which are all too often untrustworthy guides to the decision of particular cases.
 
 
 68
 Let us turn then to a consideration of certain fundamental principles of the law of subrogation, which may be thought to have general application in all American courts and to certain decisions by the New York and Missouri courts which seem, at least to me, to militate against the conclusion to which my brothers come and from which I dissent.
 
 
 69
 It is a fundamental principle of subrogation that "One who rests on subrogation stands in the place of one whose claim he has paid, as if the payment giving rise to the subrogation had not been made." United States v. Munsey Trust Co., 332 U.S. 234, 242, 67 S.Ct. 1599, 1603, 91 L.Ed. 2022. In effect, the subrogee buys the claim from the subrogor. A person is not subrogated to another's rights unless he has paid that person, or at least has satisfied an obligation owing by that person.
 
 
 70
 Liberty paid no money to Borsari. Did it satisfy an obligation owing by Borsari? In other words, was Borsari liable to the workmen's estates under the Missouri Workmen's Compensation Act? Under Missouri law, Borsari was liable to the estates only "on motion and proof of default by the insurer." Mo.Rev.Stat. 1949, § 287.300, V.A.M.S. Hence Liberty's payment was not made in Borsari's behalf.
 
 
 71
 Even if we pass this hurdle and assume that Liberty did in effect satisfy an obligation of Borsari as its insurance carrier, we have merely satisfied one condition of subrogation. That is not the same as finding subrogation. An indemnity insurer by paying to or in behalf of his assured does not necessarily become subrogated to all of the assured's claims relating to the subject matter.
 
 
 72
 Although it appears to be law in every state that upon indemnifying the assured the insurer is subrogated to the assured's tort claims against third party tortfeasors who caused the damage, 8 Couch, Cyclopedia of Insurance Law § 1997; Vance, Insurance § 134, there has been considerable disagreement among the states as to whether the insurer is similarly subrogated to contract claims of the assured against third parties also obligated to make good all or part of the loss. Note, Subrogation of the Insurer to Collateral Right of the Insured, 28 Colum.L.Rev. 202; Patterson, Cases and Materials on Insurance, 303; compare Couch, op. cit. supra, § 2017, with 2 Richards, Insurance § 188.
 
 
 73
 Neither my brothers nor I have been able to find a single case decided by any New York or Missouri court which holds an indemnity insurer subrogated to claims against third parties who had not caused the injuries. Nor am I prepared even to go so far as to say that such decisions are desirable and on the whole in the interest of justice. It is well to remember that Borsari, for reasons doubtless satisfactory to it, failed to avail itself of the cross-claim procedure provided in the Federal Rules of Civil Procedure, Rule 13(g), 28 U.S.C.A.; and there is still apparently the possibility of separate suit. Liberty doubtless should recover from Borsari; Borsari has a right to recover against Anheuser for breach of contract; but it does not shock my sense of justice to conclude that Liberty has no cause of action whatever against Anheuser.
 
 
 74
 But even if it were assumed that the judges of the highest or of other courts of New York or Missouri might be disposed to view such a holding as a forward step in the development of New York or Missouri law, the fact still remains that as yet there is no such law, the possibility of such a decision lies in gremio legis; it is a possibility but nothing more than that. There is a duty in a proper case to decide what the law of a particular state is, but not to anticipate or speculate on the subject of what that law shall some day be.
 
 
 75
 Moreover, such trend as I am able to detect in the Missouri and New York cases is in the opposite direction and indicates that subrogation to claims against third parties other than those who caused the injuries is viewed with disfavor.
 
 
 76
 In Plate Glass Underwriters' Mut. Ins. Co. v. Ridgewood Realty Co., 219 Mo. App. 186, 269 S.W. 659, 662, the insurer paid its assured the cost of replacing a plate glass window that had been blown out by a windstorm. It then claimed to be subrogated to whatever rights its assured, the tenant of the premises, had against the landlord under the lease to compel the landlord to bear the cost of such repairs. The court rejected this claim, saying:
 
 
 77
 "Now, the insurance company in the case at bar did not agree to insure or guarantee to the insured the payment of any debt, or the performance of any obligation on the part of insured's landlord. It merely agreed to insure the plate glass, i. e., the property itself, for a cash consideration, to wit, the premiums paid by insured. The insurance contract was one solely between the two parties thereto, and the insurance company only paid what it contracted primarily to do; but now, notwithstanding it still retains the premiums or the benefit of its contract, it seeks reimbursement from the landlord on the basis that the latter, under a wholly separate and independent contract, should have done so. We see no basis of subrogation arising out of the circumstances herein, and are of the opinion that the subrogation clause in the insurance contract only applies to circumstances in which the law creates the right of subrogation. The plaintiff insured the property itself, not a debt due the tenant. Havens v. Germania Ins. Co., 135 Mo. 649, 658, 659, 37 S.W. 497. The mere fact that the tenant might thus have two sources to which he could look for repair or reimbursement does not give the plaintiff the right to be subrogated to that right as to one of such sources."
 
 
 78
 In Alexandra Restaurant v. New Hampshire Ins. Co., 272 App.Div. 346, 71 N.Y.S.2d 515, a tenant had taken out fire insurance. A fire occurred, and the landlord restored the premises as required by the lease. The tenant-assured sued the insurer, which resisted payment on the ground that there had been no loss and also on the ground that it was subrogated to the tenant's right against the landlord. The holding was that the insurer was not entitled to the benefit of its assured's wholly independent contract with the landlord. The New York Court of Appeals affirmed without opinion. 297 N.Y. 858, 79 N.E.2d 268.
 
 
 79
 I would reject Liberty's claim to subrogation against Anheuser, or, at most, leave this question open for full exploration on the remand.